**HYCEL, INC.**
v.
**AMERICAN AIRLINES, INC.**
**Civ. A. No. 68-H-831.**

United States District Court,
S. D. Texas,
Houston Division.
June 23, 1971.

Charles D. Boston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for plaintiff.

William C. Harvin, William C. Bullard, Baker & Botts, Houston, Tex., for defendant.

SINGLETON, District Judge.

*Opinion and Order:*

American Airlines, defendant in this action for breach of a shipment contract, has moved for a partial summary judgment on the theory that certain damages claimed by plaintiff are special and consequential and are, therefore, not recoverable. Jurisdiction is predicated upon diversity of citizenship and a claim for damages in excess of $10,000.[1] The undisputed facts are taken from a proposed pretrial order signed and tendered for the court's signature by the counsel for each party.

By domestic airbill number 001–HOU–7594345 dated September 15, 1966, a Hycel Mark X clinical chemistry instrument was shipped on the defendant airline from Hycel's address in Houston to Exhibit Aids, Inc., a Washington, D. C., consignee. The shipment was pre-

---

1. 28 U.S.C. § 1332. *See also* 28 U.S.C. § 1337 for an alternate theory of jurisdiction.

paid in full including an additional charge necessary for excess value transportation. When the instrument arrived at its destination, it was in a damaged condition. This damage was reported to American Airlines on September 17, 1966, the damage report being accompanied by a request that American inspect the damage. An authorized representative of American Airlines did inspect the damage the following day at the consignee's Washington address. And also on that day, September 18, 1966, E. J. Wright, American's freight sales representative, prepared and signed an airfreight inspection report in which the damage to the machine and its shipping crate were noted and described. This report was signed by Robin J. Barr for Hycel. Prior to the shipment in question, Barr had notified Charles Yerkes, another of American's freight sales representatives, that the Mark X was an original prototype of an unusually high value and that it was to be demonstrated at a convention in Washington.

█ Plaintiff characterizes this suit as one for breach of contract of safe carriage and negligence. Plaintiff alleges that the instrument was damaged to such an extent that it could not be repaired which forced plaintiff to construct a new one at a cost of $58,807.43. If liable, defendant apparently does not

seriously dispute this figure, but does vehemently oppose plaintiff's damage claim over and above $58,807.43. That claim, alleged by plaintiff to be in excess of $500,000, is based upon (a) the loss of use while the machine was being reconstructed, (b) the loss of profits resulting from that loss of use, and (c) the injury to plaintiff's business reputation and loss of goodwill.[2]

The basis of defendant's motion for partial summary judgment is its Official Air Freight Rules Tariff No. 1A on file with the Civil Aeronautics Board. The pertinent provision of the tariff is Rule 3.2(d):

"The carrier shall not be liable in any event for any consequential or special damages arising from transportation subject to tariffs governed by these rules, whether or not the carrier had knowledge that such damages might be incurred."[3]

█ There can be little doubt as to the controlling effect of the tariff upon the rights of the parties. By the terms of § 403(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1373(a), all air carriers are required to file with the Civil Aeronautics Board tariffs showing, among other things, the rules and regulations in connection with air transportation.[4] Once the carrier has filed

2. As previously indicated, the damaged machine was destined for a medical convention for demonstration to those attending. The alleged loss of goodwill is said to have been precipitated when the machine in the course of the demonstration, and after plaintiff had made a futile attempt to repair it so that it could be demonstrated, failed to perform in accordance with its original capabilities. Since this machine was the original prototype of a recent invention, no other was available. The alleged loss of use and expected profits was due to the extensiveness of the damages which necessitated a complete reconstruction of the Mark X. Plaintiff contends that it was necessary to delay the marketing of the Mark X one year.

3. The common law rule regarding recovery of special and consequential dam-

ages is found in the landmark case of Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Rep. 145 (1854). That case holds that special and consequential damages are recoverable only if the party responsible for the damages is notified of the possibility of their occurrence.

4. 49 U.S.C. § 1373(a) provides in relevant part:

"Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required

its tariff, it becomes an integral part of the contract between the carrier and the shipper or the passenger as the case may be. This is so even though the passenger or shipper may be unaware of the provisions of the tariff. Lichten v. Eastern Airlines, 189 F.2d 939 (2nd Cir. 1951). *See also* Vogelsang v. Delta Air Lines, 302 F.2d 709 (2nd Cir. 1962). In Tishman & Lipp v. Delta Air Lines, 413 F.2d 1401 (2nd Cir. 1969), the court noted:

> "Tariffs filed with the Civil Aeronautics Board if valid, are conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby. * * * Limitations of liability in tariffs required to be filed by air carriers with the Civil Aeronautics Board are binding on passengers and shippers whether or not the limitations are embodied in the transporation documents." 413 F.2d 1403–1404.

The provision in question here is not invalidated by the fact of it being at odds with the common law rule. The power to determine the reasonableness of any rate, service, or exculpatory provision found in any tariff on file with the Civil Aeronautics Board has been delegated to that agency rather than to the courts. Lichten v. Eastern Airlines, *supra.*

█ The next issue upon which defendant's motion depends is whether the damages suffered by defendant are special and consequential. No case has been cited or found by the court construing the terms special and consequential damages as employed by Rule 3.2(d) of the tariff. "Special damages," however, have been defined as those which, although resulting from the commission of a wrong, are neither such a necessary result that they will be implied by law nor will be deemed within the contemplation of the parties. Stated differently, special damages always grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other, and follow the injury as a natural and proximate consequence, in the particular case, by reason of special circumstances or conditions. 25 C.J.S. Damages § 2, pp. 624–625 (1966).

█ "Consequential damages" are those which follow on account of knowledge of special conditions imputed to the defaulting party and increasing the standard of liability. Martin v. Southern Engine & Pump Co., 130 S.W.2d 1065 (Tex.Civ.App.—Gal., 1939, no writ hist.). *See also* 25 C.J.S. Damages § 2, p. 617 (1966) and cases cited. Thus, consequential damages are synonymous with special damages. *See* Monarch Brewing Co. v. Geo. J. Meyer Mfg. Co., 130 F.2d 582 (9th Cir. 1942); 25 C.J.S. Damages § 2, p. 617 (1966).

█ Ordinarily, when an injured party takes a carrier to court for lost profits resulting from damaged or misdelivered goods, the loss of profits that would otherwise have been avoided had the carrier met its responsibilities to the injured party are characterized by the courts as special damages, L. E. Whitlock Truck Service v. Regal Drilling Co., 333 F.2d 488 (10th Cir. 1964); Texas Instruments v. Branch Motor Express Co., 308 F.Supp. 1228 (D.Mass. 1970); 13 C.J.S. Carriers § 267, p. 619 (1939), though this is not necessarily so. F. J. McCarty Co. v. Southern Pacific Co., 428 F.2d 690 (9th Cir. 1970). In the latter-mentioned case, the plaintiff had contracted with a South American Company to ship a large quantity of grapes from California to Venezuela. When the shipment arrived in New York, the shipping company rejected them because of their damaged condition. Plaintiff sued the carrier and recovered an amount representing the contract price of the grapes in California plus the shipping and handling costs. This figure was held by the appellate court not to constitute special damages. There are two lessons taught by F. J.

by regulations of the Board, all classifications, rules, regulations, practices, and

services in connection with such air transportation."

194

McCarty v. Southern Pacific Co., *supra*. First, loss profits may or may not constitute special damages. Second, what amounts to special damages is largely dependent on the circumstances of each case—the circumstances which should charge the wrongdoing party with constructive knowledge that the resulting injury would be a consequence of his wrongful act—and is essentially a question of fact.

 It follows from what has been said that defendant's motion for partial summary judgment must be overruled, and it is so ordered. By the terms of Rule 56(c), F.R.Civ.P., a motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Although there is an indication in the record that at least one of American Airlines' agents knew that the Mark X was to be demonstrated at a convention,[5] the record does not at this stage of the proceedings reveal circumstances conclusively showing that defendant should have been aware that lost profits, injury from loss of use, and injury to business reputation would result from damage to the machine. Thus, there is unresolved an issue of material fact which precludes defendant from being entitled to judgment as a matter of law. Of course, the other element of damages claimed, the costs of replacement of the original prototype, cannot be held by any stretch of the imagination to be special damages. No opinion is expressed as to the effect of the $100,000 declared value of the machine, i. e., whether this limitation applies narrowly only to the cost of replacement or whether it is a blanket limitation setting the maximum amount of recovery for all damages including cost of replacement, loss of use, loss of expected profits, and injury to business reputation.

The clerk of this court is directed to file this Opinion and Order herein denying defendant's motion and to forward true copies hereof to all counsel of record.

---

5. See Deposition of Charles Yerkes, pp. 6–7.