**DRAGO DAIC, TRUSTEE
and Montgomery 666,
Ltd., Appellants,**

**v.**

**NAURU PHOSPHATE ROYALTIES
(TEXAS), INC. and Bentwood
Country Club, Inc., Appellees.**

No. 09–99–085 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 24, 2000.

Decided Sept. 21, 2000.

Rehearing Overruled Oct. 12, 2000.

---

Wesley H. Hocker, Spring, Keith Kebodeaux, Beaumont, John W. Berkel, Houston, for appellants.

Joy M. Soloway, Stephen K. Carroll, Fulbright & Jaworski, LLP, Houston, Gordon R. Pate, Pate & Dodson, Beaumont, John E. Chapoton, Jr., Cunningham, Darlow, Zook & Chapoton, LLP, Houston, for appellees.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

Drago Daic, Trustee ("Daic Trustee") and *Montgomery 666, Ltd.* ("M–666") appeal a summary judgment granted to Nauru Phosphate Royalties (Texas), Inc. ("Nauru") and Bentwood Country Club, Inc. (collectively the "Nauru Parties"). Appellants sued the Nauru Parties to collect sums alleged to be due under a promissory note executed by Nauru and secured by a deed of trust lien on Bentwood, a real property development owned by Nauru. Appellants alleged Bentwood Country Club, Inc. was believed to own a portion of the real property covered by the deed of trust. The Nauru Parties counterclaimed, seeking a declaratory judgment that the promissory note, deed of trust, and vendor's lien were no longer enforceable. In both its order and final judgment, the trial court stated the Nauru Parties were entitled to summary judgment under the theories of collateral estoppel and res judicata.

In January 1990, Nauru entered into a sale and development agreement with three parties, Daic Trustee, M–666, and Drago Daic Interests, Inc. (DDI).[1] Nauru purchased 668 acres of undeveloped land in Montgomery County, Texas from Daic Trustee and M–666 to develop the property into a residential housing subdivision, including a country club, golf course and other amenities. DDI, the other party to the agreement, was the project's developer. At closing, Nauru paid $5 million in cash to Daic Trustee and M–666 for the 668 acres. Nauru also executed an $8 million promissory note to Daic Trustee and M–666, which would be payable only if the project was successful, as defined by a formula contained in the development agreement, *i.e.*, generally, if revenues exceeded expenditures in any given year.

A dispute developed between Nauru and DDI. Nauru gave notice of its intent to terminate DDI as developer. Nauru filed a demand for arbitration and then an arbitration complaint against DDI. Shortly afterwards, Daic Trustee and M-666 filed this suit. However, the Nauru-DDI arbitration hearing proceeded, with the arbitration panel determining Nauru's breaches of the development agreement were not material and resulted in no damage to DDI. Conversely, the arbitrators found DDI's breaches of the agreement were material and resulted in damages to Nauru. The arbitrators further found: (1) Nauru properly terminated the development agreement; (2) Nauru had no further duties to DDI under the agreement; and (3) Nauru had no liability for payment of the eight million dollar promissory note executed by Nauru and payable to Daic Trustee and M-666.

Ultimately, Nauru filed suit in federal district court seeking confirmation of the arbitration award. Opposing confirmation, DDI argued the district court lacked diversity jurisdiction and the arbitration panel exceeded its authority in concluding Nauru was not liable for payment of the eight million dollar promissory note to Daic Trustee and M-666. A federal magistrate judge recommended confirmation of the award, and found the similarity of interests between DDI, Daic Trustee, and M-666 on the arbitration issues allowed for

---

1. DDI, though not a party in this suit, was one in *Nauru Phosphate Royalties, Inc. (Texas) v. Drago Daic Interests, Inc.*, 138 F.3d 160 (5th Cir.1998), where Nauru's claims were arbitrated, and then appealed through the federal court system. Nauru's success against DDI in the federal suit forms the basis for its res judicata and collateral estoppel defenses in this suit.

the enforcement of the award against Daic Trustee and M–666, even though they did not participate in the arbitration. The federal district court, after conducting a de novo review, confirmed the award and its enforcement against appellants. The Fifth Circuit then affirmed the district court's confirmation. *Nauru Phosphate Royalties, Inc. (Texas) v. Drago Daic Interests, Inc.*, 138 F.3d 160 (5th Cir.1998). The Fifth Circuit held that the arbitration panel did not exceed its authority in ruling on Nauru's liability on the promissory note, and "reject[ed] any suggestion that because Daic Trustee and M–666 were not parties to the arbitration or to this case, the breach of the Development Agreement and Nauru's consequent non-liability on the Promissory Note were beyond the reach of the arbitration." *Id.* at 162.

Subsequent to the Fifth Circuit's ruling, the trial court here found the Nauru Parties were entitled to summary judgment under "collateral estoppel and res judicata." The trial court further found the Nauru Parties had no liability to appellants "under the eight million dollar promissory note." In its final judgment, the trial court rendered a "take-nothing" judgment on appellants' claims on the basis Nauru had no liability on the note, and further decreed (1) Nauru had no continuing obligations under the deed of trust and vendor's lien contained in the warranty deed, and (2) the deed of trust and vendor's lien were "void and unenforceable."

Appellants bring four issues. In the first, they argue the note and lien should not be cancelled. In the second, they assert the dismissal of their claims, without trial or without their agreement or participation violates constitutional and statutory rights, and further assert neither the arbitrators nor the federal courts had either in personam or subject matter jurisdiction. In the third, contending generally that the arbitration award and federal court decisions were wrong on the merits, appellants make four more specific arguments: (a) they may collaterally attack the decisions;

(b) default by DDI is not a defense to collection of payments due under the note; (c) ⁀immateriality of Nauru's breaches is not a defense to collection of payments under the note; and (d) the contracts are not third party beneficiary contracts. Fourth, and finally, they maintain res judicata and collateral estoppel are not applicable.

■ The standards for review of summary judgments are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be drawn in favor of the non-movant and any doubts resolved in his favor. *See Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To obtain summary judgment based on an affirmative defense, the movant must conclusively establish all elements of the affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). The reviewing court may affirm the granting of the motion for summary judgment on any ground presented by the movant and preserved for appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). Here, the trial court's order specified the Nauru Parties were entitled to summary judgment "under collateral estoppel and res judicata." The Nauru Parties bring no counter issues alleging summary judgment was proper on other grounds. Thus, we limit our review to the grounds specified by the order.

We consider appellants' fourth issue first as it is dispositive of much of this appeal. They attack the trial court's application of res judicata and collateral estoppel with three arguments: (a) the elements of res judicata and collateral estoppel have not been shown; (b) appellants, the note holders, are not in privity with DDI; and (c) any decision relating to the legal liabili-

ty on the promissory note was not necessary to the arbitration award or the court decisions, is surplusage and dicta, and is a legal conclusion not binding on this court.

■■ Where, as here, the original judgment was entered in a federal proceeding, federal law controls whether the principles of res judicata will bar a later state court proceeding. *See Next Level Communications, L.P. v. DSC Communications Corp.*, 179 F.3d 244, 250 (5th Cir. 1999); *Geary v. Texas Commerce Bank,* 967 S.W.2d 836, 837 (Tex.1998); *Allen v. Port Drum Co.*, 777 S.W.2d 776, 777 (Tex. App.—Beaumont 1989, writ denied). Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir.), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999). Under federal law, four elements are necessary to establish res judicata, or claims preclusion: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.; Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979, 983 (5th Cir.1990).[2]

■■ As to the first element of res judicata, DDI (the defendant in the arbitration suit) is not identical to either Daic Trustee or M–666. Therefore, we consider whether DDI is in privity with them. The *Latham* court explained privity:

2. The res judicata test in Texas is almost identical. Under Texas law, the elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

3. The trial court granted appellants' motion to transmit original record and ordered that

A non-party is in privity with a party for res judicata purposes in three instances. First, if he has succeeded to the party's interest in property, he is bound by prior judgments against the party. Second, if he controlled the prior litigation, he is bound by its result. Third, he is bound if the party adequately represented his interests in the prior proceeding.

896 F.2d at 983.

The Fifth Circuit determined certain evidence showed the identity of interests among DDI, Daic Trustee, and M–666. *Nauru,* 138 F.3d at 166 n. 2. The same facts are also before us:[3]

1. Drago Daic is the sole owner of DDI.

2. Daic, Trustee represents the 3–D Trust, a verbal trust established by Drago Daic for his children and grandchildren.

3. The land that was sold to Nauru for the development was initially purchased by Drago Daic in 1983 for approximately $3.8 million.

4. Within thirty days of purchasing the land, Drago Daic sold the land in equal 50% shares and at a substantial profit to Daic, Trustee and M–666.

5. Daic Trustee and M–666 entered into a joint venture agreement with respect to the land, with Drago Daic acting as managing joint venturer.

6. Fifty-five percent of M–666 is owned by Revista, Inc., a company that is in turn owned by the 3–D Trust and effectively controlled by Drago Daic.

the arbitration transcript and exhibits("arbitration transcript") be forwarded to the appellate court. The Nauru Parties have not filed a motion to strike the arbitration transcript from the record before us. *See City of El Campo v. Rubio,* 980 S.W.2d 943, 945 (Tex. App.—Corpus Christi 1998 pet. dism'd w.o.j.). None of the parties contend on appeal that the arbitration transcripts were not before the trial court at the time it granted summary judgment. Therefore, we consider the arbitration transcript as part of record on appeal.

7. Imperial Marketing, another company owned and controlled by Drago Daic, owns 19.33% of M–666.

8. Drago Daic, individually, or Drago Daic in his capacity as the 3–D Trustee, owns 75% in the promissory note between Nauru, Daic Trustee, and M–666.

The federal district court noted that DDI, which did participate in the arbitration, had the same interests at stake as Daic Trustee and M–666. We agree. As the Fifth Circuit Court observed:

The record in this case demonstrates that the man behind all three entities— Daic Interests, Daic Trustee and M–666,—Mr. Drago Daic, fully participated in the arbitration proceedings. The district court concluded that the two note holders had notice that liability on the Promissory Note would be resolved by the arbitration panel since Nauru in its arbitration complaint contested the demands made by Daic Trustee and M–666 for payment pursuant to the Promissory Note. Thus, the record establishes that there was *sufficient identity of interests among the three entities,* DDI Daic Trustee and M–666, that it would be fair and appropriate to hold the noteholders bound by the panel's finding of non-liability on the Promissory Note.

*Nauru,* 138 F.3d at 166 (emphasis added).

The identity of interests is further demonstrated by the transaction's documents, appellants' correspondence, and appellants' arguments asserted in the federal proceedings. As to the documents, the promissory note (made by Nauru in favor of Daic Trustee and M–666) incorporated the development agreement (executed by Nauru and DDI), including the arbitration clause. The development agreement explicitly references the promissory note. Further, Nauru's duty to pay the promissory note was conditioned on DDI's performing the development agreement without material

breach. In addition, section 4.2 of the promissory note and section 7 of the deed of trust prevented Daic Trustee and M–666 from accelerating the note or exercising remedies under the deed of trust if DDI were in default.

As to the appellants' correspondence, DDI, Daic Trustee and M–666 claimed in a 1995 letter that one of DDI's primary interests was to develop the property so the promissory note could be paid to appellants. In the same letter, DDI and appellants claimed that Nauru's actions were breaches of both the development agreement and the promissory note, and that those actions resulted in damages to DDI and appellants. DDI and appellants obviously had a common interest in Nauru's payment of the note.

Moreover, the Fifth Circuit noted that DDI made several arguments on behalf of appellants in the federal courts. *Id.* at 165. DDI contended: (1) the arbitration panel's decision was not enforceable since the panel exceeded its authority; (2) Daic Trustee and M–666 signed the development agreement only with respect to section 3.7 and article 5, and the applicability of the development agreement to them is limited to those provisions; and (3) as Daic Trustee and M–666 were not parties to the arbitration, the issue of Nauru's liability on the promissory note could not be decided in their absence. *Id.* Clearly, DDI, adequately represented the interests of Daic Trustee and M–666 in the federal proceedings and the three parties shared "sufficient identity of interests." We find the privity element of res judicata has been established.

▆▆▆▆ Next, we consider the second element of res judicata—whether the judgment in the prior action was rendered by a court of competent jurisdiction. The federal district court exercised jurisdiction over Nauru's confirmation suit on the basis of diversity of citizenship.[4] In denying

---

**4.** A federal district court must have one of three types of subject matter jurisdiction: (1)

jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to

DDI's motion to dismiss, the federal district court found Nauru's principal place of business was in Nauru, a small island republic in the South Pacific. *Nauru*, 138 F.3d at 164. The Fifth Circuit applied a "total activity" test and affirmed the district court determination that Nauru's principal place of business is not in Texas, and found diversity jurisdiction was therefore proper. *Nauru*, 138 F.3d at 163–65, (citing *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401 411–12 (5th Cir.1987)). The jurisdiction of the federal courts to determine the "rights" of non-parties, Daic Trustee and M–666, to be paid under the promissory note, is amply supported by federal case law. There are numerous instances where non-parties have been held bound by a previous arbitration award or judgment. *See, e.g. Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)(where non-party had a sufficient "laboring oar" in previous litigation, principles of estoppel would bar subsequent suit); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3rd Cir.1993)("arbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory"); *Latham*, 896 F.2d at 983 ("adequate representation" of a nonparty's interest is a form of privity for res judicata purposes). We find that the prior judgment was rendered by a court of competent jurisdiction.

■ As to the third element of res judicata, we find that the federal district court rendered a final judgment on the merits. The Memorandum and Recommendation of the United States Magistrate Judge, signed February 3, 1997, was adopted in its entirety as the opinion of the federal district court. Thus, the district court determined that the arbitration panel did not exceed its authority in making findings regarding the promissory note executed by Nauru and that the arbitration

panel's finding was binding upon Daic Trustee and M–666, the very core of the issues raised here by appellants. Clearly, the federal district court reached a final judgment on the merits..

■ As to the last element of res judicata, we find that the federal and state court lawsuits concern the same causes of action. The Fifth Circuit follows the "transactional test" set forth in the RESTATEMENT (SECOND) OF JUDGMENTS "for determining whether two complaints involve the same cause of action" for res judicata purposes. *In re Southmark Corp.* 163 F.3d at 934. Under that test, the "critical issue" is whether the plaintiff bases the two actions "on the same nucleus of operative facts." *Id.* "If the factual scenario of the two actions parallel, the same cause of action is involved in both" and res judicata will bar the second suit. *Agrilectric Power Partners, Ltd. v. General Elec. Co.*, 20 F.3d 663, 665 (5th Cir.1994).

Here, the "nucleus of operative facts" or "factual scenario" is the same as that of the federal proceedings. That same nucleus or factual scenario is: the failed real estate development (Bentwood)(*i.e.*, what occurred during its attempted development), the claims for breach of the development agreement, and Nauru's liability on the promissory note. The bases for both appellants' claims below and DDI's claims in the federal proceedings are their allegations that Nauru's actions caused the development to fail. DDI and appellants all claim Nauru breached the development agreement by failing to timely fund the project, and by interfering with DDI in the development of the project. All three claim that Nauru's delay and interference resulted in insufficient revenues for the development, no cash flow for Nauru's note payments and no profits for developer DDI. In response, Nauru asserts in both proceedings that the project failed because of DDI's mismanagement, negligence and

28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Baltin v.*

*Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir.1997).

self-dealing, all of which were alleged breaches of the development agreement. The Fifth Circuit's transactional test is satisfied sufficiently to determine that both the federal and state court lawsuits concern the same causes of action.

Therefore, as to appellants' fourth issue, all four elements of res judicata, or claims preclusion, have been established. Further, as noted above, appellants are in privity with DDI, and the federal proceedings' determinations of Nauru's legal liability on the promissory note was a primary issue, not an unnecessary one or dicta or surplusage as argued by appellants in issue four. Appellants' fourth issue is overruled. We need not consider the remainder of issue four, i.e., that collateral estoppel is not applicable.

■■■ Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *In re Southmark Corp.*, 163 F.3d at 934. We apply that principle to decide most of appellants' issues. Appellants' first issue, that the note and lien should not be cancelled, has already been decided to the contrary in the federal proceedings. In appellants' third issue, they contend generally that the arbitration award and federal court decisions were wrong on the merits and also argue that: (a) they may collaterally attack the decisions; (b) default by DDI is not a defense to collection of payments due under the note; (c) immateriality of Nauru's breaches is not a defense to collection of payments under the note; and (d) the contracts are not third party beneficiary contracts. Appellants' argument that the federal decisions are subject to collateral attack because of lack of jurisdiction is meritless. As explained in *Dispensa v. University State Bank*, 987 S.W.2d 923, 928–30 (Tex.App.—Houston [14th Dist.] 1999, no pet.), Texas law allows for a judgment to be attacked collaterally if the rendering court lacks jurisdiction. However, in determining that the res judicata elements were established, we have already decided this jurisdiction question ad-

versely to appellants. The balance of their issue three arguments were, or should have been, decided in the federal proceedings. Appellants' first and third issues are overruled.

In their second issue, appellants contend that the dismissal of their claims, without trial or without their agreement or participation violates constitutional and statutory rights. This matter was, or should have been, decided in the federal proceedings and, thus, res judicata applies. Appellants further contend that neither the arbitrators nor the federal courts had either subject matter or in personam jurisdiction. Again, we note that in determining that the res judicata elements were established, we have already decided this jurisdiction question adversely to appellants. Appellants' second issue is overruled.

Thus, all of appellants's issues are overruled and the judgment of the trial court is AFFIRMED.

STOVER, Justice, dissenting.

I respectfully dissent. The instant suit seeks, inter alia, to enforce payment on a note. The parties to the note, who are also parties in this suit, are the maker, Nauru, and the payees, Montgomery 666 ("M–666") and Drago Daic, Trustee. DDI, the respondent in the arbitration proceeding, is neither a party to this suit nor to the note.

Nauru's arbitration demand and complaint were instituted against DDI. The plaintiffs in the instant suit, M–666 and Drago Daic, Trustee, were not made parties to the arbitration proceeding. Although the record of the arbitration proceeding contains references to the promissory note, the essence of Nauru's complaint at arbitration was that DDI breached the development agreement between Nauru and DDI.

Nauru's position is that even though M–666 and Drago Daic, Trustee, were not parties in the arbitration proceeding, the arbitration award nonetheless is res judi-

cata as to their claims; being in privity with DDI, they are collaterally estopped from suing now on those issues. I do not find the record bears that out. The fact that Drago Daic is the sole shareholder in DDI, that he is the trustee of the 3–D Trust, that there is intertwining ownership of various corporations connected with Drago Daic, does not, without more, mean that he acted in his individual capacity in his dealings with those entities. I do not find such statements, or evidence to that effect in the record, to be sufficiently conclusive to establish that Drago Daic, individually, controlled M–666 or Drago Daic, Trustee, or that the interests of Drago Daic, individually, were the same as M–666, DDI, and Drago Daic, Trustee. As a result, I would hold that Nauru has not met its summary judgment burden and has not established as a matter of law its affirmative defenses of res judicata and collateral estoppel.

Furthermore, I would note, as did Judge Ross Sears in his amended dissent to the arbitration award, that the failure to make M–666 and Drago Daic, Trustee, parties to the arbitration process and the attempt now to bind them to the results of an arbitration proceeding in which they were not parties smacks of the denial of due process and thereby abridges a fundamental constitutional right. See U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. It is apparent, at least to me, that fair play, being the test of due process, is lacking in this case.

Respectfully, I dissent.