**CONTINENTAL HOLDINGS, LTD., Appellant,**

v.

**Jim LEAHY, Individually; Brown, Parker & Leahy, L.L.P.; and Thompson & Knight, L.L.P., Appellees.**

No. 11–02–00326–CV.

Court of Appeals of Texas, Eastland.

Nov. 20, 2003.

Coyt Randal Johnston, Robert L. Tobey Johnston & Tobey, Roy Ryden Anderson, Professor of Law, Southern Methodist University, Dallas, for appellant.

Christine Roseveare, P. Michael Jung, David N. Kitner, Strasburger & Price, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

This is a legal malpractice case. Continental Holdings, Ltd. sued its former lawyers, Jim Leahy, Individually; Brown, Parker & Leahy, L.L.P.; and Thompson & Knight, L.L.P. (the Lawyers). The Lawyers represented Continental in an arbitration proceeding in which Continental sought to recover damages from Western Atlas International, Inc. resulting from Western's breach of a contract. The arbitrators determined that Western breached the contract and awarded some of the damages sought by Continental. However, the arbitrators found that Continental did not meet its burden of proof on its alleged benefit of the bargain damages and denied Continental recovery of those damages.

In this case, Continental alleged that the Lawyers breached their duties to Continental in the arbitration proceeding by failing to introduce evidence that was sufficient to satisfy its burden of proof on the benefit of the bargain damages. Continental also alleged that the arbitrators would have awarded it benefit of the bargain damages but for the Lawyers' negligence. The Lawyers moved for summary judgment, asserting that their alleged negligence did not proximately cause any damage to Continental because a limitation-of-liability provision in Continental's contract with Western excluded recovery of benefit of the bargain damages. The trial court granted summary judgment to the Lawyers. We affirm.

### Issues Presented

Continental presents five issues for review. In its first issue, Continental asserts a general complaint that the trial court erred in granting summary judgment. In its second and third issues, Continental asserts that the trial court erred in granting summary judgment because (a) the arbitrators ruled that the limitation-of-liability provision in the contract did not prevent the recovery of benefit of the bargain damages and (b) the arbitrators' ruling on the limitation-of-liability issue was binding on the trial court. In its fourth issue, Continental argues that the trial court erred in granting summary judgment because, irrespective of the arbitrators' ruling, the contract permitted it to recover benefit of the bargain damages for Western's breach. In its fifth issue, Continental asserts that, if the contract did not unambiguously permit or deny recovery of Continental's benefit of the bargain damages, the cause should be remanded to the trial court for a resolution of the factual dispute presented by the ambiguous contract.

### Background Facts

Continental agreed to perform geophysical services for Western under the con-

tract. The contract required Continental to provide Western with the vessel, the *M/V Pacific Titan,* fully crewed, for a period of 12 months. The start date for the contract was October 1, 1998. A number of disputes arose between Continental and Western; and, on December 29, 1998, Western issued a notice of termination of the contract. Continental asserted that Western's termination of the contract was wrongful.

Continental and Western submitted a number of their disputes to arbitration, including the issue whether Western had the right to terminate the contract. The arbitrators determined that Western's termination of the contract constituted a breach of the contract. Under the contract, the charter rate for the *M/V Pacific Titan* was $33,000 per day. Continental argued that, as a result of Western's breach, it was entitled to recover $33,000 a day for the full contract term of one year. The arbitrators disagreed in their findings:

20. The classic measure of contract damages is to put the injured party in the position it would have been in had the contract been performed. Awarding Continental the day rate of $33,000 per day for a full year, as urged by Continental, does not, however, accomplish this goal. If the contract clearly called for such a remedy in the event of early termination, and we find that it does not, the remedy would constitute an impermissible penalty.

21. One way to compensate Continental for its damages would be to consider the revenues expected to be earned, less the expenses saved as a consequence of the breach. It was Continental's burden to prove its damages with reasonable certainty. The undated budget produced at the hearing does not alone constitute competent evidence of the expenses saved as a consequence of the breach. Continental did not sustain its burden of proof on any "benefit of the bargain" damages, and we therefore decline to award such damages.

The arbitrators did, however, award the following damages to Continental: (1) $1,056,000 for services performed under the contract before Western terminated it; and (2) $2,251,405 for costs that Continental incurred in performing the contract.

Continental defines its benefit of the bargain damages under the contract as "those profits that it would have earned on the *Pacific Titan* Contract itself, but for [Western's] breach." Continental argues that it is entitled to recover those lost profits from the Lawyers. In their motion for summary judgment, the Lawyers asserted that, because the limitation-of-liability provision in Continental's contract with Western precluded Continental's recovery of lost profits damages, their alleged negligence in failing to present sufficient evidence of lost profits in the arbitration proceeding did not proximately cause any damage to Continental. The trial court granted summary judgment to the Lawyers on this ground.

### Standard of Review

This appeal involves the review of a traditional motion for summary judgment. We will apply the well-recognized standard of review for traditional summary judgments. We must consider the summary judgment evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). A de-

fendant is entitled to summary judgment if it either disproves an element of each of the plaintiff's causes of action or establishes an affirmative defense on each of the plaintiff's causes of action as a matter of law. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

### The Effect of the Arbitration Award

■ The Lawyers argue that Continental waived the issue of the conclusive effect of the arbitrators' award—that the contract did not prevent recovery of benefit of the bargain damages—by failing to present the issue to the trial court in its response to the Lawyers' motion for summary judgment. The record establishes that Continental raised the issue for the first time in its motion for rehearing and/or new trial. TEX.R.CIV.P. 166a(c) provides that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Continental's failure to raise the issue of the conclusive effect of the arbitrators' award in its response to the Lawyers' motion for summary judgment constituted a waiver of the issue. *Kelley–Coppedge, Inc. v. Highlands Insurance Company*, 980 S.W.2d 462, 467 (Tex.1998)(holding that a party waived reliance on an argument that it asserted for the first time in a motion for new trial)(citing *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 343 (Tex.1993), and *City of Houston v. Clear Creek Basin Authority, supra* at 676). Continental's second and third issues are overruled.

■ Even if Continental had presented this issue in its response to the Lawyers' motion for summary judgment, the arbitration award would not have bound the trial court on the limitation-of-liability is-

sue. Continental argues that, although the arbitrators did not refer to the limitation-of-liability provision in their award, the arbitrators addressed the limitation-of-liability issue and decided the issue in its favor. To support its argument, Continental asserts that "[t]he arbitrators would never have discussed Continental's lost revenue and absence of evidence of expenses saved, had those profits been excluded by the *Pacific Titan* Contract." The Lawyers respond that the limitation-of-liability provision in the contract was an affirmative defense of Western and that the arbitrators never reached that affirmative defense issue because of Continental's insufficient evidence on benefit of bargain damages.

■ An arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrators because the award has the effect of a judgment of a court of last resort. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex.2002); *Powell v. Gulf Coast Carriers, Inc.*, 872 S.W.2d 22, 24 (Tex.App.-Houston [14th Dist.] 1994, no writ). This case is not a direct appeal from an arbitration award. Rather, Continental attempts to rely on the arbitration award in this collateral proceeding against its former lawyers. In collateral proceedings, the courts apply collateral estoppel principles to arbitration awards. *Postlewaite v. McGraw–Hill*, 333 F.3d 42, 48 (2nd Cir.2003); *Drago Daic, Trustee v. Nauru Phosphate Royalties, (Texas), Inc.*, 27 S.W.3d 695, 701 (Tex. App.-Beaumont 2000, pet'n den'd); *Fluor Daniel, Inc. v. H.B. Zachry Company, Inc.*, 1 S.W.3d 166, 169 (Tex.App.-Corpus Christi 1999, pet'n den'd). "The doctrine of collateral estoppel precludes relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit." *Tarter v. Metropolitan Savings & Loan Association*, 744 S.W.2d 926, 927 (Tex.1988). If an issue was not actual-

ly decided in a prior arbitration proceeding or if its resolution was not necessary to the arbitration award, its litigation in a subsequent proceeding is not barred by collateral estoppel. *Postlewaite v. McGraw–Hill, supra* at 48.

Thus, collateral estoppel would have precluded the Lawyers from litigating the limitation-of-liability issue only if (1) the arbitrators decided the limitation-of-liability issue and (2) the arbitrators' ruling on the limitation-of-liability issue was essential to the arbitration award. *Postlewaite v. McGraw–Hill, supra* at 48; *Tarter v. Metropolitan Savings & Loan Association, supra* at 927. We need not determine whether the arbitrators decided the limitation-of-liability issue because, even if they did, their ruling on the issue was not essential to their award. The limitation-of-liability provision in the contract constitutes an affirmative defense. *See Regency Advantage Limited Partnership v. Bingo Idea–Watauga, Inc.,* 928 S.W.2d 56, 63 (Tex.App.-Fort Worth 1995), *aff'd in part and rev'd in part,* 936 S.W.2d 275 (Tex. 1996). The arbitrators ruled that Continental failed to meet its burden of proof on the issue of its "lost profits" damages. It is not necessary to address an affirmative defense when a plaintiff does not first establish its affirmative claims for relief. Therefore, a finding on the limitation-of-liability issue was not essential to the arbitrators' award because of their finding of failure of proof. Even if Continental had presented a collateral estoppel defense in the trial court, the doctrine of collateral estoppel would not have barred the Lawyers from litigating the limitation-of-liability issue. *Postlewaite v. McGraw–Hill, supra* at 48.

### Continental's Alleged Damages and the Limitation–of–Liability Provision

■ The limitation-of-liability provision in Paragraph 13.2 of the general agreement of the contract provides that:

Neither [Western] or [Continental] shall bear any liability to the other for loss of production, loss of profits, loss of business or any other indirect or consequential damages, including, inter-alia, special and punitive damages.

Continental asserts that the term "loss of profits" is modified by the phrase "or any other indirect or consequential damages" so as to prevent only the recovery of "indirect" or "consequential" lost profits damages. Continental argues that the limitation-of-liability provision does not preclude its claim for damages because it is seeking to recover "direct" lost profits damages.

Continental correctly states that breach of contract damages are categorized as (1) "direct" or "general" damages or (2) "consequential" or "special" damages. *See Frost Nat. Bank v. Heafner,* 12 S.W.3d 104, 111 n. 5 (Tex.App.-Houston [1st Dist.] 1999, pet'n den'd). Furthermore, lost profits damages may take the form of "direct" damages or the form of "consequential" damages. *See Hycel, Inc. v. American Airlines, Inc.,* 328 F.Supp. 190, 193 (S.D.Tex.1971); *Imaging Systems International, Inc. v. Magnetic Resonance Plus, Inc.,* 227 Ga.App. 641, 490 S.E.2d 124 (1997). Profits lost on the breached contract itself, such as the amount that Continental would have received on the contract less its saved expenses, are classified as "direct" damages. Profits lost on other contracts or relationships resulting from the breach are classified as "indirect" damages. *See Imaging Systems International, Inc. v. Magnetic Resonance Plus, Inc., supra.* Continental's alleged lost profits damages are "direct" damages.

The issue is whether the limitation-of-liability provision precludes the recovery of "direct" profits damages. In construing a written contract, the primary concern of

the court is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391 (Tex.1983); *Southland Royalty Company v. Pan American Petroleum Corporation*, 378 S.W.2d 50 (Tex.1964); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all of the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). The courts give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 122 (Tex.1996).

We will apply these rules of construction in determining whether the contract precludes Continental's recovery of "direct" lost profits damages. The contract included: (1) a general agreement; (2) a supplemental agreement; and (3) a supplemental agreement No. 2. The contract provided Continental with a specific remedy in the event of early termination for reasons other than Continental's default. Section III, Paragraph 6 of the general agreement provided:

*CONTRACT RATE*

[Western] shall pay [Continental] in accordance with the rates, charges and fees, and on the terms set out in Supplemental Agreement.... *Additionally, in the event of early termination for reasons other than [Continental's] default, [Continental] shall be compensated according to the schedule contained in Supplemental Agreement.* (Emphasis added)

Paragraphs 2 and 3 of the supplemental agreement provided in part:

2. The daily charter rate for the *Pacific Titan* is U.S. $33,000.00 per day. This amount is payable for each day the vessel is under contract, regardless of whether or not the vessel is acquiring seismic data.

3. In addition, the *Pacific Titan* will receive U.S. $55.00 per CMP kilometer for all accepted CMP kilometers.

Thus, the early termination remedy set forth in Section III, Paragraph 6 of the general agreement and Paragraphs 2 and 3 of the supplemental agreement provided that Continental would receive: (1) $33,000 for each day that the vessel was under contract and (2) $55 per CMP kilometer for all accepted CMP kilometers. The vessel was under contract until December 29, 1998, the date that Western terminated the contract.

The early termination remedy limited Continental's recovery of damages under the schedule to the time period that the vessel was under contract. In this case, however, Continental seeks to recover "direct" lost profits for the time period that the contract would have been in effect had Western not terminated it. As such, Continental's alleged "direct" lost profits damages relate to a time period that the vessel was no longer under contract; therefore, Continental's requested remedy is inconsistent with the early termination remedy. The contract's early termination remedy is consistent with interpreting the limitation-of-liability provision to preclude the recovery of "direct" lost profits. Otherwise, Continental would be permitted to recover

damages in excess of those permitted by the early termination remedy.

Other rules of contract construction also support a conclusion that Western and Continental intended to preclude the recovery of "direct" lost profits damages. The plain, ordinary, and generally accepted meaning of the term "loss of profits" includes "direct" damages and "indirect" damages. *Hycel, Inc. v. American Airlines, Inc., supra; Imaging Systems International, Inc. v. Magnetic Resonance Plus, Inc., supra.* Continental's and Western's use of the phrase "or any other indirect or consequential damages" does not establish that they intended to alter the plain meaning of "loss of profits." If Continental and Western had intended to preclude only the recovery of "indirect" lost profits, they did not need to include the phrase "loss of profits" in the provision because a general prohibition of recovery of "indirect" damages would include "indirect" lost profits. Therefore, to adopt Continental's interpretation of Paragraph 13.2 would render the term "loss of profits" meaningless.

We find that Paragraph 13.2 unambiguously precludes the recovery of "direct" and "indirect" lost profits damages. Continental's first, fourth, and fifth issues are overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.