Reversed and Remanded and Opinion filed December 22, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00086-CV

___________________

 

Cherokee County Cogeneration Partners, L.P.,
Appellant

 

v.

 

Dynegy Marketing and Trade, Dynegy GP, Inc.,
DMT Holdings, L.P., DMT G.P., L.L.C., and CHEVRON U.S.A., INC., Appellees



 



 

On
Appeal from the 55th District Court

Harris County,
Texas



Trial Court Cause No. 2006-07706A

 



 

 

OPINION

This commercial dispute arises from a
natural-gas seller’s failure to deliver an agreed quantity of gas to the
purchaser, appellant Cherokee County Cogeneration Partners, L.P. (“Cherokee”). 
The seller, appellee Dynegy Marketing and Trade,[1]
successfully moved for summary judgment by arguing Cherokee seeks only
consequential “lost profits” damages disclaimed by the parties’ contract.  We
hold Cherokee has alleged compensable direct damages under the contract. 
Therefore, we reverse and remand.

I.

BACKGROUND

Pursuant to a take-or-pay Gas Purchase Agreement (the
“Agreement”),[2]
Dynegy must supply, and Cherokee must purchase, a fixed quantity of natural gas
daily at an agreed-upon price that is identified in the Agreement as the
“Commodity Charge.”  Under the Agreement, Cherokee may use the purchased gas at
its discretion to fuel its cogeneration facility or resell the gas to third
parties.

When Hurricanes Katrina and Rita struck the Gulf
Coast in the fall of 2005, Dynegy declared force majeure.  From August
29 through October 3, Dynegy did not supply the full contract amount of natural
gas, which prompted Cherokee to operate its cogeneration facility in some
diminished capacity.  During that time, the market price of natural gas
skyrocketed to an amount between five and ten times the Commodity Charge
specified in the Agreement.

Cherokee demanded Dynegy support its force majeure
declaration with the “full particulars” of its inability to perform.  After
Dynegy refused Cherokee’s request to audit its financial records, Cherokee sued
Dynegy for breach of contract and declaratory judgment.  Cherokee alleged
Dynegy could have performed its contract obligations but instead improperly
declared force majeure to capitalize on the higher market price.[3]  

In its petition, Cherokee pleaded damages according
to a formula contained in Section 5.2 of the Agreement.  Briefly, that
provision identified Cherokee’s breach-of-contract remedy, as to the
undelivered natural gas, as the difference between the Commodity Charge and
market price.

Dynegy moved for partial summary judgment on
Cherokee’s contract claims, contending Cherokee sought only “consequential”
lost-profits damages — that is, the profits Cherokee might have earned by
reselling gas to third parties — in violation of Section 5.4, which disclaims
“consequential damages.”  The trial court granted Dynegy’s motion for partial
summary judgment,[4]
which became final after Cherokee non-suited its remaining declaratory-judgment
claims.  Cherokee timely appealed.

II.

STANDARD OF REVIEW

We review the trial court’s grant of Dynegy’s
traditional motion for summary judgment under well-established standards of
review.  See Seidner v. Citibank (S.D.) N.A., 201 S.W.3d 332, 334 (Tex.
App.—Houston [14th Dist.] 2006, pet. denied).  The summary-judgment movant must
demonstrate the absence of a genuine issue of material fact entitling the
movant to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  We review the
motion and evidence de novo, taking as true all evidence favorable to
the nonmovant and resolving any doubts in its favor.  See Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

Our primary concern when interpreting a contract is
to ascertain and give effect to the parties’ intent.  Perry Homes v. Cull,
258 S.W.3d 580, 606 (Tex. 2008).  We therefore focus on the language used in
the contract because that is the best indication of the parties’ intent.  See
id.  We examine the entire contract in an effort to harmonize and
effectuate all of its provisions so that none are rendered meaningless.  Seagull
Energy E&P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex.
2006).  Therefore, we do not give controlling effect to any single provision;
instead, we read all of the provisions in light of the entire agreement.  See
id. (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  We
may not rewrite the parties’ contract or add to its language under the guise of
interpretation.  Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.,
207 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). 
Instead, we must enforce the agreement as written.  See id.

III.

RELEVANT CONTRACT PROVISIONS

The parties’ contract
dispute centers on the following provisions in the Agreement:

5.2.      Seller’s Failure to Make Gas Available. 
If Seller fails, in whole or in part, to make available to Buyer the
then-effective Nominated Purchase Quantity on any day, and if such failure is
not excused by an event of force majeure or Buyer’s failure to take gas
nominated, Buyer’s right to recover damages for such failure shall be limited
to an amount equal to the shortfall in delivery from the Nominated Purchase
Quantity, multiplied by the amount, if any, by which the Gas Daily Spot Price
(hereinafter defined) exceeds the applicable Commodity Charge.  Seller agrees
to pay Buyer any damages to which Buyer is entitled under this Section 5.2, on
or before the 10th day after Seller receives a written calculation of the
amount of such damages from Buyer.

. . . .

5.4.      No Special Damages.  The remed[y]
specified in Section[] . . . 5.2 above shall be the sole and exclusive remed[y]
for . . . Seller’s failure to deliver gas according to this Agreement.  Neither
party shall be liable in any event for consequential, incidental, special or
punitive damages or losses which may be suffered by the other as a result of
the failure to deliver . . . the required quantities of gas.[5]

The parties agree that, in the event Dynegy fails to
deliver the full amount of contract gas, Section 5.2 prescribes Cherokee’s sole
remedy against Dynegy as the difference between their agreed-upon contract
price and the prevailing market price for the undelivered gas.  However, they
disagree about the scope and effect of the language in Section 5.4 that
disclaims “consequential damages.”

Dynegy contends Section 5.4’s proscription against
“consequential damages” extends to any “lost profits” Cherokee might have
realized by reselling gas to third parties at a higher market price.  Thus,
Dynegy claims Section 5.2 provides a remedy only if Cherokee suffered an actual
out-of-pocket loss by purchasing “cover gas” at a higher price on the spot
market.[6] 
Because it did not, Dynegy argues Cherokee has not suffered compensable damages
and therefore has no remedy for Dynegy’s alleged breach of contract.

Cherokee denies claiming consequential damages in its
lawsuit.  Instead, Cherokee insists it seeks only direct damages, that is, the
market value of the gas not received,[7]
according to the parties’ agreed-upon formula set forth in Section 5.2. 
Further, Cherokee argues the Agreement contains no cover requirement — either
express or implied — and is therefore governed by the Uniform Commercial Code,
which permits an aggrieved party to choose between cover and damages for
non-delivery of contract goods.  See Tex. Bus. & Comm. Code Ann. §§
2.711(a), 2.712(c), 2.712 cmt. 3 (Vernon 2009).

 

 

IV.

ANALYSIS

To decide whether Section 5.4 bars Cherokee’s claim
for damages, we first determine the scope of the contractual term
“consequential damages.”  Because the Agreement does not define that term, we
presume the parties intended its ordinary meaning.  See Intercont’l Group
P’ship v. KB Home Loan Star L.P., 295 S.W.3d 650, 653 (Tex. 2009) (citing Valence
Operating Co., 164 S.W.3d at 662).  Here, we ascribe the meaning of
“consequential damages” found in the common law.  See McMahan v. Greenwood,
108 S.W.3d 467, 487 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

At common law, actual damages may be either “direct”
or “consequential.”  Arthur Andersen & Co. v. Perry Equip. Corp.,
945 S.W.2d 812, 816 (Tex. 1997).  Direct damages, which flow naturally and
necessarily from a defendant’s wrongful act, compensate the plaintiff for a
loss that is conclusively presumed to have been foreseen by the defendant as a
usual and necessary consequence of its wrongdoing.  See id.  By
contrast, consequential damages “result naturally, but not necessarily, from
the defendant’s wrongful acts.”  Stuart v. Bayless, 964 S.W.2d 920, 921
(Tex. 1998) (quoting Arthur Andersen, 945 S.W.2d at 816).

The category of “consequential damages” may encompass
some, but not all, claims for loss of profits and, in fact, Dynegy’s argument
necessarily depends upon its description of Cherokee’s damages as “profits lost
on other contracts,” a label Cherokee eschews.  “Lost profits” consist of
damages for the loss of net income to a business.  Miga v. Jensen, 96
S.W.3d 207, 213 (Tex. 2002).  Lost profits may be classified as either direct
or consequential damages, depending on their nature.  Mood v. Kronos Prods.,
Inc., 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied); Cont’l
Holdings, Ltd. v. Leahy, 132 S.W.3d 471, 475 (Tex. App.—Eastland 2003, no
pet.); Tenn. Gas Pipeline Co. v. Technip USA Corp., No. 01-06-00535-CV,
2008 WL 3876141, at *11 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet.
denied) (mem. op.).  That is, profits lost on the contract itself — such as the
amount a party would have received on the contract minus its saved expenses — are
direct damages.  See Mood, 245 S.W.3d at 12; Leahy, 132 S.W.3d at
475.  

On the other hand, profits lost on other contracts or
relationships resulting from the breach may be classified as “indirect” or consequential
damages.  Mood, 245 S.W.3d at 12; Leahy, 132 S.W.3d at 475. 
Stated differently, if “a party’s expectation of profit is incidental to the
performance of the contract, the loss of that expectancy is consequential.”  Tenn.
Gas Pipeline, 2008 WL 3876141, at *11 (citing Naegeli Transp. v. Gulf
Electroquip, Inc., 853 S.W.2d 737, 739 (Tex. App.—Houston [14th Dist.]
1993, writ denied)).

Dynegy argues Cherokee’s loss falls into the latter
category.[8] 
Specifically, Dynegy contends Cherokee, by failing to cover, lost only the
ability to resell gas to third parties at a higher market price, which it
characterizes as “profits lost on other contracts or relationships” and
therefore consequential.  See Mood, 245 S.W.3d at 12.  We disagree
because the damages Cherokee seeks to recover represent built-in profits lost
on the Agreement itself.  

The Agreement obligates Cherokee to purchase and
entitles it to receive gas by paying an agreed-upon price — identified as the
“Commodity Charge” — regardless of the current market price for natural gas. 
The parties also expressly agreed that Cherokee could then (1) use the
purchased gas to fuel its cogeneration facility, or (2) resell the gas
to a third party.  The Agreement provides:

3.6.      Right to Resell Gas[.]         Nothing
in this Agreement shall be construed to restrict Buyer’s right to resell any
gas purchased under this Agreement; provided, however, that if Buyer (or
Buyer’s successor in interest) ceases to utilize this Agreement as the primary
source of fuel for the Cogeneration Facility, Seller shall have the right to
terminate this Agreement upon not less than sixty days’ prior written notice to
Buyer.[9]

In other words, the Agreement itself freely
authorizes Cherokee to profit from increases in the market-price of natural
gas,[10]
by purchasing the commodity from Dynegy at the contract price and then
reselling the purchased gas at a higher price.[11] 
Thus, any wrongful interference with that contractual right, including Dynegy’s
alleged breach, would naturally and necessarily cause Cherokee to suffer direct
damages in the form of profits on the Agreement itself.[12]  See Arthur
Andersen, 945 S.W.2d at 816; Mood, 245 S.W.3d at 12; Leahy,
132 S.W.3d at 475.

Therefore, we hold Section 5.2, which permits
Cherokee to recover the market value of the gas not delivered less the contract
purchase price, provides a measure of direct, not consequential, damages.  See
Frost Nat’l Bank v. Heafner, 12 S.W.3d 104, 111 n.5 (Tex. App.—Houston [1st
Dist.] 1999, pet. denied) (describing “benefit of the bargain” damages as a
measure of direct damages).  In reaching this conclusion, we note the Uniform
Commercial Code similarly identifies the remedy outlined in Section 5.2 as a
measure of direct damages that may be recovered “together with”
consequential damages:

[T]he measure of damages for non-delivery or repudiation by
the seller is the difference between the market price at the time when the
buyer learned of the breach and the contract price together with[13] any incidental
and consequential damages . . . but less expenses saved in consequence of
the seller’s breach.

Tex. Bus. & Comm. Code Ann. § 2.713(a) (Vernon 2009)
(emphasis added).

Thus, because the damages Cherokee seeks under
Section 5.2 represent direct, not consequential damages, they are not
disallowed by Section 5.4.  Accordingly, Cherokee has pleaded compensable
damages in its suit against Dynegy, and the trial court’s summary judgment
therefore must be reversed.

V.

CONCLUSION

We reverse the trial court’s judgment and remand this
case for additional proceedings not inconsistent with this opinion.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Chief
Justice Hedges, Justice Sullivan, and Senior Justice Hudson.*

 









[1] Appellees consist of
Dynegy Marketing and Trade, Dynegy GP, Inc., DMT Holdings, L.P., DMT G.P.,
L.L.C., and Chevron U.S.A., Inc., to whom we collectively refer as “Dynegy.”





[2] The Agreement has been
marked as “confidential.”  Therefore, we will discuss its terms only to the
extent necessary to resolve the issues raised in this appeal.





[3] The merits of Dynegy’s force
majeure declaration are not before us in this appeal.





[4] The trial court suggested
the parties consider an interlocutory appeal in light of the significance of
its ruling, see Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (Vernon
2008), but Dynegy declined the offer.





[5] Capitalization
normalized.





[6] Thus, Dynegy contends the
parties’ Agreement supersedes the Uniform Commercial Code’s cover provisions.  See
Tex. Bus. & Comm. Code Ann. § 2.719(a)(1), (c) (Vernon 2009) (permitting
parties to contractually limit a party’s remedies for breach).





[7] See First State Bank,
N.A. v. Morse, 227 S.W.3d 820, 829 n.6 (Tex. App.—Amarillo 2007, no pet.)
(noting, in the conversion context, that recovery of the fair market value of
property constitutes “actual, as opposed to special, damages”) (citing United
Mobile Networks, L.P. v. Deaton, 939 S.W.2d 146, 147–48 (Tex. 1997)).





[8] Alternatively, Dynegy
urges us to ignore the common-law distinction and declare all lost
profits to be consequential damages.  In support, Dynegy cites Tooke v. City
of Mexia, in which the Texas Supreme Court rejected the Tookes’
lost-profits claim because the Local Government Code expressly limited their
breach-of-contract damages to the balance “due and owed” under the contract
plus interest.  See Tooke, 197 S.W.3d 325, 346 (Tex. 2006) (“[T]he
Tookes do not claim damages within [section 271.153 of the Local Government
Code].  Their only claim is for lost profits, which are consequential damages
excluded from recovery under the statute.”); City of Houston v. Petrol.
Traders Corp., 261 S.W.3d 350, 359 (Tex. App.—Houston [14th Dist.] 2008,
rule 53.7(f) motion granted) (“Lost profits are consequential damages under
271.153.”) (emphasis added).  However, we decline to extend Tooke
beyond the governmental-immunity context to eliminate the well-recognized
distinction between profits lost on other contracts, which are consequential,
and those lost on the contract itself, which are direct.  See Mood, 245
S.W.3d at 12; Leahy, 132 S.W.3d at 475; Hycel, Inc. v. Am. Airlines,
Inc., 328 F. Supp. 190, 193–94 (S.D. Tex. 1971).





[9] Emphasis added.





[10] See Miga, 96
S.W.3d at 213 (“[A]n increase in the market value of goods never delivered
under a contract is not the same as lost profits.”).





[11] We therefore disagree
with Dynegy’s suggestion that Cherokee’s ability to resell natural gas
to a third party somehow transforms its benefit-of-the-bargain damages into
“profits lost on other contracts or relationships.”  See Mood, 245
S.W.3d at 12.  By definition, establishing the market value of undelivered
property, as is contemplated by Section 5.2, necessarily requires Cherokee to
prove the price a willing buyer would pay to a willing seller.  See State v.
Whataburger, Inc., 60 S.W.3d 256, 262 (Tex. App.—Houston [14th Dist.] 2001,
pet. denied); Nelson v. Najm, 127 S.W.3d 170, 177 (Tex. App.—Houston
[1st Dist.] 2003, pet. denied).  Thus, the mere fact that an undelivered good could
have been resold does not force the conclusion that a buyer who agreed to a
consequential-damages disclaimer must always cover the seller’s non-performance
or be faced with no remedy at all for the seller’s breach.





[12] By contrast, Cherokee
acknowledged during oral argument that any profits lost on its other contracts
for the sale of electricity produced by its cogeneration facility would be
consequential.  See Mood, 245 S.W.3d at 12; Tenn. Gas Pipeline,
2008 WL 3876141, at *11 (holding gas pipeline suffered consequential damages
when seller’s failure to timely deliver purchased equipment prevented it from
selling gas to its customers).





[13] See Harris v. Hines,
137 S.W.3d 898, 906 n.3 (Tex. App.—Texarkana 2004, no pet.) (noting the
commonly understood meaning of the phrase “together with” is “in addition to”).





* Senior Justice J. Harvey Hudson sitting
by assignment.