11th Court of Appeals
Eastland, Texas
Opinion
 
Continental Holdings, Ltd. 
            Appellant
Vs.            No. 11-02-00326-CV – Appeal from Dallas County
Jim Leahy, Individually; Brown, Parker & Leahy, 
L.L.P.; and Thompson & Knight, L.L.P.
 
            Appellees 
 
            This is a legal malpractice case. Continental Holdings, Ltd. sued its former lawyers, Jim
Leahy, Individually; Brown, Parker & Leahy, L.L.P.; and Thompson & Knight, L.L.P. (the Lawyers). 
The Lawyers represented Continental in an arbitration proceeding in which Continental sought to
recover damages from Western Atlas International, Inc. resulting from Western’s breach of a
contract. The arbitrators determined that Western breached the contract and awarded some of the
damages sought by Continental. However, the arbitrators found that Continental did not meet its
burden of proof on its alleged benefit of the bargain damages and denied Continental recovery of
those damages. 
            In this case, Continental alleged that the Lawyers breached their duties to Continental in the
arbitration proceeding by failing to introduce evidence that was sufficient to satisfy its burden of
proof on the benefit of the bargain damages. Continental also alleged that the arbitrators would have
awarded it benefit of the bargain damages but for the Lawyers’ negligence. The Lawyers moved for
summary judgment, asserting that their alleged negligence did not proximately cause any damage
to Continental because a limitation-of-liability provision in Continental’s contract with Western
excluded recovery of benefit of the bargain damages. The trial court granted summary judgment to
the Lawyers. We affirm. 
Issues Presented
            Continental presents five issues for review. In its first issue, Continental asserts a general
complaint that the trial court erred in granting summary judgment. In its second and third issues,
Continental asserts that the trial court erred in granting summary judgment because (a) the arbitrators
ruled that the limitation-of-liability provision in the contract did not prevent the recovery of benefit
of the bargain damages and (b) the arbitrators’ ruling on the limitation-of-liability issue was binding
on the trial court. In its fourth issue, Continental argues that the trial court erred in granting
summary judgment because, irrespective of the arbitrators’ ruling, the contract permitted it to recover
benefit of the bargain damages for Western’s breach. In its fifth issue, Continental asserts that, if 
the contract did not unambiguously permit or deny recovery of Continental’s benefit of the bargain
damages, the cause should be remanded to the trial court for a resolution of the factual dispute
presented by the ambiguous contract. 
Background Facts
            Continental agreed to perform geophysical services for Western under the contract. The
contract required Continental to provide Western with the vessel, the M/V Pacific Titan, fully
crewed, for a period of 12 months. The start date for the contract was October 1, 1998. A number
of disputes arose between Continental and Western; and, on December 29, 1998, Western issued a
notice of termination of the contract. Continental asserted that Western’s termination of the contract
was wrongful. 
            Continental and Western submitted a number of their disputes to arbitration, including the
issue whether Western had the right to terminate the contract. The arbitrators determined that
Western’s termination of the contract constituted a breach of the contract. Under the contract, the
charter rate for the M/V Pacific Titan was $33,000 per day. Continental argued that, as a result of
Western’s breach, it was entitled to recover $33,000 a day for the full contract term of one year. The
arbitrators disagreed in their findings:
            20. The classic measure of contract damages is to put the injured party in the
position it would have been in had the contract been performed. Awarding
Continental the day rate of $33,000 per day for a full year, as urged by Continental,
does not, however, accomplish this goal. If the contract clearly called for such a
remedy in the event of early termination, and we find that it does not, the remedy
would constitute an impermissible penalty. 
 
            21. One way to compensate Continental for its damages would be to consider
the revenues expected to be earned, less the expenses saved as a consequence of the
breach. It was Continental’s burden to prove its damages with reasonable certainty. 
The undated budget produced at the hearing does not alone constitute competent
evidence of the expenses saved as a consequence of the breach. Continental did not
sustain its burden of proof on any “benefit of the bargain” damages, and we therefore
decline to award such damages. 
 
The arbitrators did, however, award the following damages to Continental: (1) $1,056,000 for
services performed under the contract before Western terminated it; and (2) $2,251,405 for costs that
Continental incurred in performing the contract. 
            Continental defines its benefit of the bargain damages under the contract as “those profits that
it would have earned on the Pacific Titan Contract itself, but for [Western’s] breach.” Continental
argues that it is entitled to recover those lost profits from the Lawyers. In their motion for summary
judgment, the Lawyers asserted that, because the limitation-of-liability provision in Continental’s
contract with Western precluded Continental’s recovery of lost profits damages, their alleged
negligence in failing to present sufficient evidence of lost profits in the arbitration proceeding did
not proximately cause any damage to Continental. The trial court granted summary judgment to the
Lawyers on this ground. 
Standard of Review
            This appeal involves the review of a traditional motion for summary judgment. We will
apply the well-recognized standard of review for traditional summary judgments. We must consider
the summary judgment evidence in the light most favorable to the non-movant, indulging all
reasonable inferences in favor of the non-movant, and determine whether the movant proved that
there were no genuine issues of material fact and that it was entitled to judgment as a matter of law.
Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546 (Tex.1985); City of Houston
v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex.1979). A defendant is entitled to summary
judgment if it either disproves an element of each of the plaintiff’s causes of action or establishes
an affirmative defense on each of the plaintiff’s causes of action as a matter of law. American
Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex.1997); Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex.1997).
The Effect of the Arbitration Award
            The Lawyers argue that Continental waived the issue of the conclusive effect of the
arbitrators’ award – that the contract did not prevent recovery of benefit of the bargain damages –
by failing to present the issue to the trial court in its response to the Lawyers’ motion for summary
judgment. The record establishes that Continental raised the issue for the first time in its motion for
rehearing and/or new trial. TEX.R.CIV.P. 166a(c) provides that “[i]ssues not expressly presented
to the trial court by written motion, answer or other response shall not be considered on appeal as
grounds for reversal.” Continental’s failure to raise the issue of the conclusive effect of the
arbitrators’ award in its response to the Lawyers’ motion for summary judgment constituted a waiver
of the issue. Kelley-Coppedge, Inc. v. Highlands Insurance Company, 980 S.W.2d 462, 467
(Tex.1998)(holding that a party waived reliance on an argument that it asserted for the first time in
a motion for new trial)(citing McConnell v. Southside Independent School District, 858 S.W.2d 337,
343 (Tex.1993), and City of Houston v. Clear Creek Basin Authority, supra at 676). Continental’s
second and third issues are overruled.
            Even if Continental had presented this issue in its response to the Lawyers’ motion for
summary judgment, the arbitration award would not have bound the trial court on the limitation-of-liability issue. Continental argues that, although the arbitrators did not refer to the limitation-of-liability provision in their award, the arbitrators addressed the limitation-of-liability issue and
decided the issue in its favor. To support its argument, Continental asserts that “[t]he arbitrators
would never have discussed Continental’s lost revenue and absence of evidence of expenses saved,
had those profits been excluded by the Pacific Titan Contract.” The Lawyers respond that the
limitation-of-liability provision in the contract was an affirmative defense of Western and that the
arbitrators never reached that affirmative defense issue because of Continental’s insufficient
evidence on benefit of bargain damages. 
            An arbitration award is conclusive on the parties as to all matters of fact and law submitted
to the arbitrators because the award has the effect of a judgment of a court of last resort. CVN
Group, Inc. v. Delgado, 95 S.W.3d 234, 238 (Tex.2002); Powell v. Gulf Coast Carriers, Inc., 872
S.W.2d 22, 24 (Tex.App. – Houston [14th Dist.] 1994, no writ). This case is not a direct appeal from
an arbitration award. Rather, Continental attempts to rely on the arbitration award in this collateral
proceeding against its former lawyers. In collateral proceedings, the courts apply collateral estoppel
principles to arbitration awards. Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2nd Cir. 2003);
Drago Daic, Trustee v. Nauru Phosphate Royalties, (Texas), Inc., 27 S.W.3d 695, 701 (Tex.App.
– Beaumont 2000, pet’n den’d); Fluor Daniel, Inc. v. H.B. Zachry Company, Inc., 1 S.W.3d 166,
169 (Tex.App. – Corpus Christi 1999, pet’n den’d). “The doctrine of collateral estoppel precludes
relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior
suit.” Tarter v. Metropolitan Savings & Loan Association, 744 S.W.2d 926, 927 (Tex.1988). If an
issue was not actually decided in a prior arbitration proceeding or if its resolution was not necessary
to the arbitration award, its litigation in a subsequent proceeding is not barred by collateral estoppel.
Postlewaite v. McGraw-Hill, supra at 48. 
            Thus, collateral estoppel would have precluded the Lawyers from litigating the limitation-of-liability issue only if (1) the arbitrators decided the limitation-of-liability issue and (2) the arbitrators’
ruling on the limitation-of-liability issue was essential to the arbitration award. Postlewaite v.
McGraw-Hill, supra at 48; Tarter v. Metropolitan Savings & Loan Association, supra at 927. We
need not determine whether the arbitrators decided the limitation-of-liability issue because, even if
they did, their ruling on the issue was not essential to their award. The limitation-of-liability
provision in the contract constitutes an affirmative defense. See Regency Advantage Limited
Partnership v. Bingo Idea-Watauga, Inc., 928 S.W.2d 56, 63 (Tex.App. – Fort Worth 1995), aff’d
in part and rev’d in part, 936 S.W.2d 275 (Tex.1996). The arbitrators ruled that Continental failed
to meet its burden of proof on the issue of its “lost profits” damages. It is not necessary to address
an affirmative defense when a plaintiff does not first establish its affirmative claims for relief. 
Therefore, a finding on the limitation-of-liability issue was not essential to the arbitrators’ award
because of their finding of failure of proof. Even if Continental had presented a collateral estoppel
defense in the trial court, the doctrine of collateral estoppel would not have barred the Lawyers from
litigating the limitation-of-liability issue. Postlewaite v. McGraw-Hill, supra at 48. 
Continental’s Alleged Damages and the Limitation-of-Liability Provision
            The limitation-of-liability provision in Paragraph 13.2 of the general agreement of the
contract provides that:
Neither [Western] or [Continental] shall bear any liability to the other for loss of
production, loss of profits, loss of business or any other indirect or consequential
damages, including, inter-alia, special and punitive damages. 
 
Continental asserts that the term “loss of profits” is modified by the phrase “or any other indirect or
consequential damages” so as to prevent only the recovery of “indirect” or “consequential” lost
profits damages. Continental argues that the limitation-of-liability provision does not preclude its
claim for damages because it is seeking to recover “direct” lost profits damages. 
            Continental correctly states that breach of contract damages are categorized as (1) “direct”
or “general” damages or (2) “consequential” or “special” damages. See Frost Nat. Bank v. Heafner,
12 S.W.3d 104, 111 n. 5 (Tex.App. – Houston [1st Dist.] 1999, pet’n den’d). Furthermore, lost
profits damages may take the form of “direct” damages or the form of “consequential” damages. See
Hycel, Inc. v. American Airlines, Inc., 328 F. Supp. 190, 193 (S.D. Tex. 1971); Imaging Systems
International, Inc. v. Magnetic Resonance Plus, Inc., 490 S.E.2d 124 (Ga. 1997). Profits lost on the
breached contract itself, such as the amount that Continental would have received on the contract
less its saved expenses, are classified as “direct” damages. Profits lost on other contracts or
relationships resulting from the breach are classified as “indirect” damages. See Imaging Systems
International, Inc. v. Magnetic Resonance Plus, Inc., supra. Continental’s alleged lost profits
damages are “direct” damages. 
            The issue is whether the limitation-of-liability provision precludes the recovery of “direct”
profits damages. In construing a written contract, the primary concern of the court is to ascertain the
true intentions of the parties as expressed in the instrument. R & P Enterprises v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518 (Tex.1980). To achieve this objective, courts should examine
and consider the entire writing in an effort to harmonize and give effect to all of the provisions of
the contract so that none will be rendered meaningless. Coker v. Coker, 650 S.W.2d 391 (Tex.1983);
Southland Royalty Company v. Pan American Petroleum Corporation, 378 S.W.2d 50 (Tex.1964);
Universal C. I. T. Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex.1951). No single provision
taken alone will be given controlling effect; rather, all of the provisions must be considered with
reference to the whole instrument. Myers v. Gulf Coast Minerals Management Corporation, 361
S.W.2d 193, 196 (Tex.1962); Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 150 S.W.2d 1003,
1006 (Tex.1941). The courts give terms their plain, ordinary, and generally accepted meaning unless
the instrument shows that the parties used them in a technical or different sense. Heritage
Resources, Inc. v. NationsBank, 939 S.W.2d 118, 122 (Tex.1996).
            We will apply these rules of construction in determining whether the contract precludes
Continental’s recovery of “direct” lost profits damages. The contract included: (1) a general
agreement; (2) a supplemental agreement; and (3) a supplemental agreement No. 2. The contract
provided Continental with a specific remedy in the event of early termination for reasons other than
Continental’s default. Section III, Paragraph 6 of the general agreement provided:
CONTRACT RATE
[Western] shall pay [Continental] in accordance with the rates, charges and fees, and
on the terms set out in Supplemental Agreement....Additionally, in the event of early
termination for reasons other than [Continental’s] default, [Continental] shall be
compensated according to the schedule contained in Supplemental Agreement. 
(Emphasis added) 
 
Paragraphs 2 and 3 of the supplemental agreement provided in part: 
2. The daily charter rate for the Pacific Titan is US $33,000.00 per day. This amount
is payable for each day the vessel is under contract, regardless of whether or not the
vessel is acquiring seismic data.
 
3. In addition, the Pacific Titan will receive US $55.00 per CMP kilometer for all
accepted CMP kilometers.
            Thus, the early termination remedy set forth in Section III, Paragraph 6 of the general
agreement and Paragraphs 2 and 3 of the supplemental agreement provided that Continental would
receive: (1) $33,000 for each day that the vessel was under contract and (2) $55 per CMP kilometer
for all accepted CMP kilometers. The vessel was under contract until December 29, 1998, the date
that Western terminated the contract. 
            The early termination remedy limited Continental’s recovery of damages under the schedule
to the time period that the vessel was under contract. In this case, however, Continental seeks to
recover “direct” lost profits for the time period that the contract would have been in effect had
Western not terminated it. As such, Continental’s alleged “direct” lost profits damages relate to a
time period that the vessel was no longer under contract; therefore, Continental’s requested remedy
is inconsistent with the early termination remedy. The contract’s early termination remedy is
consistent with interpreting the limitation-of-liability provision to preclude the recovery of “direct”
lost profits. Otherwise, Continental would be permitted to recover damages in excess of those
permitted by the early termination remedy. 
            Other rules of contract construction also support a conclusion that Western and Continental
intended to preclude the recovery of “direct” lost profits damages. The plain, ordinary, and generally
accepted meaning of the term “loss of profits” includes “direct” damages and “indirect” damages. 
Hycel, Inc. v. American Airlines, Inc., supra; Imaging Systems International, Inc. v. Magnetic
Resonance Plus, Inc., supra. Continental’s and Western’s use of the phrase “or any other indirect
or consequential damages” does not establish that they intended to alter the plain meaning of “loss
of profits.” If Continental and Western had intended to preclude only the recovery of “indirect” lost
profits, they did not need to include the phrase “loss of profits” in the provision because a general
prohibition of recovery of “indirect” damages would include “indirect” lost profits. Therefore, to
adopt Continental’s interpretation of Paragraph 13.2 would render the term “loss of profits”
meaningless.
            We find that Paragraph 13.2 unambiguously precludes the recovery of “direct” and “indirect”
lost profits damages. Continental’s first, fourth, and fifth issues are overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed. 
  
                                                                                                TERRY McCALL
                                                                                                JUSTICE
 
November 20, 2003
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.