

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00214-CV

———————————————

SHEA O'NEILL, Appellant

V.

CITY OF FORT WORTH, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-323683-21

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

This is the second appeal we have dealt with in this case. This case involves Chapter 143 of the Texas Local Government Code, which controls the employment and discipline of police officers and fire fighters employed by Appellee the City of Fort Worth. *See generally* Tex. Loc. Gov't Code Ann. §§ 143.001–.363. The case has gone through many procedural hoops since the last appeal, and we will set forth that circuitous procedural history below.

At the crux of this appeal is the trial court's declaratory judgment, ordering that the initial hearing examiner may not preside over the rehearing of Appellant Shea O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department. In three issues, O'Neill argues that the trial court erred by (1) impliedly finding that the City's declaratory-judgment suit is not barred by res judicata or collateral estoppel, (2) impliedly finding that it had subject-matter jurisdiction over the City's declaratory-judgment claim, and (3) fashioning a remedy that is not authorized by the Civil Service Act. We dispose of O'Neill's three issues as follows:

- We hold that the trial court did not err by impliedly finding that the City's declaratory-judgment suit is not barred by res judicata or collateral estoppel. The issue of the hearing examiner's independence could not have been considered by the judge on remand (Judge Kimberly Fitzpatrick) because the issue was not part of the narrow issue that was

2

remanded to her and because the hearing examiner's denial of the City's plea to the jurisdiction did not preclude a declaratory-judgment action interpreting a statute and determining the applicability of certain Local Rules.

- We further hold that the trial court did not err by impliedly finding that it had subject-matter jurisdiction over the City's declaratory-judgment action (1) because the administrative remedies, if any, that exist in the Local Rules are not required to be exhausted prior to a declaratory-judgment action construing a statute and determining the applicability of certain Local Rules and (2) because the declarations requested by the City are purely questions of law to which the doctrine of the exhaustion of administrative remedies does not apply.

- We further hold that the trial court did not err by referring to the Texas Arbitration Act (TAA) for guidance in interpreting/applying the Civil Service Act and in declaring that the rehearing cannot be heard by the initial hearing examiner who is no longer independent.

Accordingly, we affirm.

## II. Background

After O'Neill was involved in a physical altercation with an elderly man at a TCU football scrimmage, the Fort Worth Fire Department indefinitely suspended

3

him as a City fire fighter. O'Neill appealed that decision to hearing examiner Almalee Guttshall, who reversed the suspension and ordered the City to reinstate him.

The City appealed the hearing examiner's decision to the district court, which granted O'Neill's plea to the jurisdiction and dismissed the case for lack of subject-matter jurisdiction.[1]

The City then appealed to this court, arguing that the district court had jurisdiction to consider the City's appeal for two reasons: (1) the hearing examiner's (Guttshall's) decision was procured by unlawful means because she considered evidence not admitted at the hearing, and (2) Guttshall exceeded her jurisdiction because she concluded that the Fire Department's due-process violations compelled her to reinstate O'Neill. *See City of Fort Worth v. O'Neill*, No. 02-18-00131-CV, 2020 WL 370571, at *2–5 (Tex. App.—Fort Worth Jan. 23, 2020, no pet.) (mem. op.). We held that (1) the district court erred by granting O'Neill's plea to the jurisdiction on the City's procured-by-unlawful-means claim because whether Guttshall's opinion was procured through evidence outside the hearing contrary to the Civil Service Act presented a fact question, and (2) the district court did not err by granting O'Neill's jurisdictional plea based on the City's exceeded-jurisdiction claim. *Id.* at *5–6. We remanded solely the City's procured-by-unlawful-means claim for further proceedings. *Id.* at *6.

---

[1]A visiting judge ruled on the plea to the jurisdiction.

4

The sole issue that was remanded to the district court was decided by Judge Fitzpatrick. Judge Fitzpatrick entered findings of fact, including that in Guttshall's written decision ordering the City to reinstate O'Neill to the Fort Worth Fire Department, she cited to a blogpost that was not introduced into evidence.[2] Judge Fitzpatrick concluded that Guttshall had violated Texas Local Government Code Sections 143.010(g) and 143.053(d) by relying on evidence that was not introduced at the hearing. Accordingly, because Guttshall's decision reversing O'Neill's indefinite suspension and reinstating him to the Fort Worth Fire Department was procured by unlawful means, Judge Fitzpatrick vacated Guttshall's decision and ordered a rehearing.[3] Neither party appealed Judge Fitzpatrick's judgment.

---

[2]Judge Fitzpatrick's findings of fact note that Guttshall gave a deposition in this case, and those findings summarize statements that Guttshall had made about the evidence that she had considered.

[3]O'Neill filed a motion to modify the judgment, contending that

[t]he [City] argued at trial that the [c]ourt should find that Independent Hearing Examiner Guttshall cannot serve as the hearing examiner for a rehearing. The [City] also urged that if it prevailed on the merits, the parties should start the hearing-examiner-selection process all over, including undoing Mr. O'Neill's choice to appeal to a hearing examiner instead of to the local [C]ivil [S]ervice [C]ommission, a selection that the statute requires to be made within 10 days of termination. [Tex. Loc. Gov't Code Ann.] §§ 143.010(a), 143.057(b).

Mr. O'Neill pointed out that such relief is not legally available and that the [City] had not pleaded for such relief. [The City's] Petition seeks "[a]n [o]rder from the [c]ourt overturning the hearing examiner's decision and . . . upholding [O'Neill]'s indefinite suspension." At trial,

5

Thereafter, the City received a calendar invitation from O'Neill for a January 28, 2021 event titled, "Shea O'Neill Indefinite Suspension Appeal Rehearing - Before IHE Guttshall." The City objected to the hearing and filed a plea to the jurisdiction with Guttshall. Guttshall subsequently sent a calendar event titled "IN THE Hearing MATTER OF THE APPEAL OF SHEA O'NEILL-INDEFINITE SUSPENSION BEFORE INDEPENDENT HEARING EXAMINER ALMALEE GUT[T]SHALL" with a Zoom link purporting to set a civil-service hearing on February 18–19, 2021. Due to inclement weather the week of February 15, 2021, O'Neill and Guttshall agreed to proceed with the hearing on March 8–9, 2021, again, over the City's objections and explanation that the hearing was not being properly set and that Guttshall lacked jurisdiction. Guttshall denied the City's plea to the jurisdiction and ordered the rehearing to occur on March 8–9, 2021.

Meanwhile, the City attempted to engage with O'Neill to select a new hearing examiner to preside over the rehearing of O'Neill's civil-service appeal in accordance with Texas Local Government Code Section 143.057(d). The Fort Worth Civil Service Director requested a list of seven qualified, neutral arbitrators from the American Arbitration Association (AAA); the list was provided. O'Neill refused to

---

[the City] conceded that relief is not legally available; if a hearing examiner's decision is set aside, the case must be reheard.

O'Neill then urged the trial court to sign a modified judgment that included language stating that the case would be reheard by Guttshall. The motion was overruled by operation of law.

remit his portion of the fee to the AAA and refused to participate in the process contemplated under Chapter 143 to select a hearing examiner from the list obtained by the Civil Service Director. Instead, O'Neill worked in concert with Guttshall and attempted on multiple occasions to unilaterally set a hearing before Guttshall without the involvement of the City's Civil Service Director.

The City then filed suit (that resulted in the present appeal) under the Uniform Declaratory Judgments Act (UDJA) requesting declarations that (1) a hearing examiner who has rendered an unlawful award in a fire fighter's civil-service appeal may not rehear the same matter under Texas Local Government Code Section 143.057 and (2) a civil-service appeal under Texas Local Government Code Section 143.057 must be coordinated by the Civil Service Director pursuant to Sections 13.029 and 13.030[4] of the Local Rules of the Firefighters' and Police Officers' Civil

---

[4]These two sections govern the actions of the Civil Service Director:

13.029

    The location and accommodations for all hearings and appeals shall be arranged by the Director of Civil Service.

13.030

    All subsequent matters raised by either party regarding attendance, scheduling, requests for subpoenas, request for continuances, etc., shall be coordinated through the Director. All such information shall be provided to the Director who shall then provide copies of same to the opposing party or representative and also coordinate the appropriate response or action to be taken. In a hearing coordinated by an outside agency, that agency shall also provide coordination services between the

7

Service Commission of the City of Fort Worth, Texas.[5] The City also sought a temporary restraining order (TRO) and a temporary injunction to prevent O'Neill from proceeding with an improper hearing with Guttshall before the UDJA case could be tried on the merits.[6]

The trial court, after examining the application for a TRO and hearing arguments from counsel on both sides, found that the City would be injured if O'Neill's purported civil-service hearing was allowed to proceed before Guttshall on March 8–9, 2021, and that holding such hearing "would cause irreparable harm by requiring the City to expend resources in the hearing it contends is illegitimate before

---

parties and the hearing examiner in conjunction with the Director's office.

*See Civil Service Rules*, City of Fort Worth (Dec. 14, 1998), https://www.fortworthtexas.gov/departments/hr/administration/prr/civilservice (last visited Jan. 25, 2022).

[5]In its prayer, the City asked for more specific declarations than those set forth at the outset of its original petition: (1) that Almalee Guttshall may not preside over the new civil-service hearing regarding O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department; (2) that O'Neill must participate in the selection process for a hearing examiner under Texas Local Government Code Section 143.057(d), including remitting payment for his portion of the American Arbitration Association's list of hearing examiners and selecting a name from the seven-name list provided by the AAA, or striking names until only one person remains on the list in compliance with the statute; and (3) that O'Neill's civil-service appeal may only be coordinated by the Civil Service Director. Because the declarations set forth in the opening paragraph of the City's original petition are more succinct, we reference those.

[6]This suit was filed in the 48th District Court, and a bench trial was held by Judge David Evans. We refer to this court as the trial court.

a hearing examiner who has predetermined the outcome and compromising the public trust and confidence in the civil[-]service appeal process." The trial court thus issued a TRO enjoining O'Neill from "[p]articipating in a hearing before . . . Guttshall on March 8–9, 2021, or attempting to reset the matter before . . . Guttshall for a hearing date prior to March 26, 2021." The trial court later granted the City's application for a temporary injunction with similar prohibitions.

The trial court held a trial on the merits of the City's declaratory-judgment claim. At the conclusion, the trial court requested post-trial briefs from the parties on the interpretation of "independent hearing examiner" as used in Texas Local Government Code Section 143.057[7] and whether someone could be disqualified from serving as a hearing examiner if she demonstrated bias and prejudice. After receiving post-trial briefs from both the City and O'Neill, the trial court rendered judgment in favor of the City, ordering that "Guttshall may not preside over the new civil[-]service hearing regarding O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department" and that "O'Neill must participate in the selection process for a hearing examiner under [Section] 143.057(d)." The trial court entered findings of fact and conclusions of law.[8] O'Neill requested additional findings related to res judicata,

---

[7]The exact wording in the statute is "independent third[-]party hearing examiner." Tex. Loc. Gov't Code Ann. § 143.057(b), (c).

[8]Finding of fact number 17 and conclusion of law number 5 are as follows:

9

collateral estoppel, and the necessity of exhausting administrative remedies, but the trial court did not make additional findings.

O'Neill now appeals from the trial court's final judgment on the City's declaratory-judgment claim.

### III. Appeals under the Civil Service Act

In the prior appeal, we provided an overview of Chapter 143 and repeat that here:

> Chapter 143 of the Texas Local Government Code—commonly referred to as the Civil Service Act—governs the civil-service employment of firefighters and police officers in those Texas municipalities (like Fort Worth) that have adopted the Act. *See generally id.* §§ 143.001–.403. In a civil-service disciplinary case yielding (among other things) an indefinite suspension, a firefighter may appeal either to the municipality's commission or to an independent hearing examiner. *See id.* §§ 143.010 (outlining commission-appeal procedure), 143.053 (discussing disciplinary-suspension appeals to commission), 143.057(a) (permitting appeal to an independent hearing examiner instead of to commission). Here, O'Neill chose the hearing-examiner route. Hearing examiners have the same duties and powers as the commission, *id.* § 143.057(f),

---

17. Upon learning of the instant lawsuit and the City's request for injunctive relief, Ms. Guttshall exclaimed in an email to the parties that, "I really don't understand. [. . .] I wrote that because I felt sorry for the old guy. [. . . ] I don't know think [sic] there even needs to be another hearing, much less a TRO. [. . . ] Sorry, just had to vent."

. . . .

5. Almalee Guttshall previously issued an unlawful decision in the underlying [civil-service] appeal and has subsequently demonstrated a bias against the City—and in favor of her previous, unlawfully procured decision—such that she cannot now serve as an "independent," "neutral," and "impartial" hearing examiner for the rehearing of [O'Neill]'s [civil-service] appeal[.]

10

which include conducting the hearing fairly and impartially, rendering a just and fair decision, and considering only the evidence submitted at the hearing. *Id.* § 143.010(g); *see also* [*City of Pasadena v.*] *Smith*, 292 S.W.3d [14,] 20 [(Tex. 2009)] ("[Section 143.010(g)] both confers and limits the power of a commission and a hearing examiner. It mandates that a decision be made on evidence submitted at the hearing."); *see also* Tex. Loc. Gov't Code Ann. § 143.053(d) (prohibiting commission from considering evidence that was not presented at the hearing).

*Id.* at *2 (footnote omitted). We set forth a more detailed explanation of Section 143.057 in our discussion of O'Neill's third issue.

## IV. The Law on Declaratory Judgments and the Standard of Review

The Dallas Court of Appeals has succinctly summarized the law applicable to declaratory judgments and the standard of review that we apply:

A declaratory judgment is a remedial measure that affords parties relief from uncertainty with respect to rights, status, and other legal relations. Tex. Civ. Prac. & Rem. Code [Ann.] § 37.002(b); *Halliburton Energy Servs., Inc. v. Axis Tech, LLC*, 444 S.W.3d 251, 262 (Tex. App.—Dallas 2014, no pet.). A declaratory judgment is proper if "it will serve a useful purpose or will terminate the controversy between the parties." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995).

In reviewing declaratory judgments, we look to the procedure used to resolve the issue at trial to determine the appropriate standard of review. *See* Tex. Civ. Prac. & Rem. Code [Ann.] § 37.010; *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 196 (Tex. App.—Dallas 2013, pet. denied); *MetroMarke Multifamily Dev. Fund I, L.P. v. RRAC Dev. GP, LLC*, No. 05-18-00900-CV, 2019 WL 6522181, at *2 (Tex. App.—Dallas Dec. 4, 2019, no pet.) (mem. op.). Here, judgment was rendered after a bench trial. We, therefore, apply a sufficiency-of-the-evidence review to the trial court's factual findings and review the trial court's conclusions of law de novo. *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied); *Am. First Nat'l Bank v. Jordan-Lewis Dev., L.P.*, No. 01-09-00990-CV, 2011 WL 2732779, at *4 (Tex. App.—Houston [1st Dist.] July 14, 2011, no pet.) (mem. op.).

11

> . . . We evaluate . . . legal conclusions independently to determine whether the trial court correctly drew the legal conclusions from the facts. *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 402 (Tex. App.—Dallas 2006, no pet.).

*Eco Planet, LLC v. ANT Trading*, No. 05-19-00239-CV, 2020 WL 6707561, at *2 (Tex. App.—Dallas Nov. 16, 2020, pet. denied) (mem. op.).

On appeal, O'Neill does not specifically challenge any of the findings of fact; indeed, he leaves the trial court's basis for granting relief unchallenged.[9] Instead, his first two issues set up procedural arguments for why the trial court was allegedly barred from hearing the declaratory-judgment action and challenge what he deems are implied findings. In his third issue, he mentions conclusions of law 3 and 4,[10] but his

---

[9]Of note, none of O'Neill's issues or arguments on appeal contend that the trial court erred by concluding in conclusion of law 5 that Guttshall "previously issued an unlawful decision . . . and has subsequently demonstrated a bias against the City—and in favor of her previous, unlawfully procured decision" and "cannot now serve as an 'independent,' 'neutral,' and 'impartial' hearing examiner for the rehearing." This conclusion of law appears to be drawn from finding of fact 17, which details the statements that Guttshall made in an email to the parties after learning of the City's lawsuit and request for injunctive relief—including that she did not think "there even need[ed] to be another hearing, much less a TRO."

[10]Conclusions of law 3 and 4 are as follows:

3. Chapter 143 is silent regarding who presides over such a rehearing; however, Chapter 143 contemplates that all hearing examiners shall be "independent," "neutral," and "impartial," so that a "just and fair" decision may be rendered;

4. The Texas Supreme Court has previously looked to the Texas Arbitration Act when interpreting provisions in Chapter 143. The Texas Arbitration Act allows for a new arbitration panel to be selected when an

12

argument appears to attack solely conclusion of law 4, contending that the trial court should not have relied on the TAA to fashion a remedy. We will address each of his issues below.

## V. Res Judicata and Collateral Estoppel Did Not Preclude the City's Declaratory-Judgment Suit

In his first issue, O'Neill argues that the trial court erred by impliedly finding that the City's declaratory-judgment lawsuit was not barred by res judicata or collateral estoppel. O'Neill contends that the issue of the hearing examiner's bias was litigated (1) in a prior lawsuit and (2) by the hearing examiner "after the City voluntarily submitted the issue to the hearing examiner for decision." For the reasons explained below, the trial court did not err by impliedly finding that the declaratory-judgment lawsuit was not barred by res judicata or collateral estoppel.

### A. Applicable Law

This court has previously explained the difference between the concepts of collateral estoppel and res judicata:

> Collateral estoppel and res judicata are related concepts concerning the preclusive effect of final judgments. *See Barr v. [Resol.] Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Collateral estoppel, or issue preclusion, precludes the relitigation of issues resolved in a prior suit. *Id.* Res judicata, or claim preclusion, bars the relitigation of claims that have been finally adjudicated or arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). . . .

---

arbitrator has reached a decision by "corruption, fraud, or other undue means."

13

> For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) the same parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. [*Id.*] The policies behind this doctrine "reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 629 (citing Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata*, 28 Sw. L.J. 355, 358–59 (1974)). The doctrine can also apply to the relitigation of claims previously determined by an administrative agency. *See, e.g.*, *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86–87 (Tex. 2008) ("We have, however, held that to further the public policy discouraging prolonged and piecemeal litigation, the administrative orders of certain administrative agencies bar the same claims being relitigated in the court system."); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (collecting cases).

*New Talk, Inc. v. Sw. Bell Tel. Co.*, 520 S.W.3d 637, 645–46 (Tex. App.—Fort Worth 2017, no pet.) (footnote omitted).

To prevail on a collateral-estoppel defense, a party must establish the following: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) the facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (op. on reh'g).

**B.    Analysis**

**1.    Whether Any Presumption Is Necessary**

At the outset of his first issue, O'Neill relies on *Boy Scouts of America v. Responsive Terminal Systems, Inc.* to contend that we cannot presume findings in support of the

14

judgment on the issues of res judicata and collateral estoppel because of the trial court's refusal to make any findings on these defensive issues despite his multiple requests. 790 S.W.2d 738, 742–43 (Tex. App.—Dallas 1990, writ denied). O'Neill's contention and reliance on *Boy Scouts of America* is misplaced as there is no need to presume any findings here.

The main issue presented to the trial court was whether Guttshall could preside over the rehearing regarding O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department. O'Neill asserted the affirmative defenses of res judicata and collateral estoppel in his response to the City's request for a TRO, and he filed his response prior to his answer. Assuming without deciding that the affirmative defenses were properly before the trial court, no guesswork is needed to conclude that the trial court disagreed with O'Neill's assertion of the defenses of res judicata and collateral estoppel. *See York v. Cooper-York*, No. 02-20-00356-CV, 2021 WL 2753527, at *3 (Tex. App.—Fort Worth July 1, 2021, pet. denied) (mem. op.) ("[W]hen only a single ground of recovery or a single defense is presented to the trial court, the record shows the appellant has suffered no harm because [it] is not forced to guess the reasons for the trial court's judgment." (quoting *Mora v. Mora*, No. 04-17-00428-CV, 2018 WL 4903079, at *4 (Tex. App.—San Antonio Oct. 10, 2018, pet. denied) (mem. op.))). The trial court's findings support the judgment and resolve the main issue that was presented; thus, additional findings were not necessary. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet.

denied) (op. on reh'g) ("The trial court, however, as the trier-of-fact has no duty to make additional or amended findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate." (first citing Tex. R. Civ. P. 298; and then citing *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.—El Paso 1996, no writ))).[11]

## 2. Whether the Issue Was Tried to Judge Fitzpatrick

O'Neill next argues within his first issue that the relief the City requested in the trial court is the same relief that the City previously requested from Judge Fitzpatrick. O'Neill points to the following: (1) the City's trial brief before Judge Fitzpatrick asked her to "remand this case for a new civil[-]service appeal hearing, in which [O'Neill] would have the opportunity to have his case heard by the Civil Service

---

[11]O'Neill requested additional findings on his res judicata and collateral estoppel defenses in the form of findings that resolved the factual issues on the elements of that defense in favor of the City. His stated reason for doing so was that "the findings and conclusions are necessary so that, on appeal, [O'Neill] may challenge either the findings and conclusions supporting key rulings made by the [c]ourt or, if they are not entered, the lack of those findings and conclusions." Thus, the purpose of the request was to avoid waiver of the defense that would result from the failure of the findings to reference any element of the defense. *See Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied) (stating that "[a] party asserting an independent ground of recovery or an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver" and that "[i]f the findings filed by the trial court do not include any element of the ground of recovery or defense asserted, failure to request additional findings relevant thereto effects a waiver of the ground or defense"). The request for additional findings preserved his right to argue before us that the City's suit was barred by res judicata. But, as noted above, he does not argue that the failure to enter the findings impaired his ability to present his appeal. As a result, there was no error in the failure to enter the additional findings in and of itself.

Commission of the City of Fort Worth, or, at [O'Neill]'s election, by **a new independent hearing examiner**," and (2) the City requested that Judge Fitzpatrick make conclusions of law that "Ms. Guttshall has demonstrated that she cannot serve as an independent hearing examiner in this matter, as required by Chapter 143 of the Texas Local Government Code" and that the rehearing must be held before "a different civil[-]service hearing examiner." O'Neill contends that these items were fully and finally litigated by Judge Fitzpatrick when the City's first request for relief was not "expressly granted" in Judge Fitzpatrick's judgment and when the City's requested conclusions of law were not included among those entered by Judge Fitzpatrick.[12] O'Neill's arguments miss the mark because they ignore the nature of the limited remand.

When an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court may only determine that particular issue. *Fomby v. ManorCare – Sharpview of Hous., Tex., LLC*, No. 01-19-00618-CV, 2021 WL 2424933, at *3 (Tex. App.—Houston [1st Dist.] June 15, 2021, pet. denied) (mem. op.) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). On remand, "the trial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate." *Id.* (citing *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013)).

---

[12]O'Neill's arguments appear to contradict the argument that he made before Judge Fitzgerald when he noted in his motion to modify the judgment that the issue of bias could not be considered because it had not been pleaded by the City.

Here, our opinion in the prior appeal concluded, "Having sustained the City's issue in part, we reverse the trial court's order granting O'Neill's plea to the jurisdiction on the City's procured-by-unlawful-means claim and remand *that claim* to the trial court for further proceedings. We affirm the remainder of the trial court's order." *City of Fort Worth*, 2020 WL 370571, at *6 (emphasis added). Our mandate included the same limited scope of remand.

Judge Fitzpatrick was therefore constrained on remand to decide only the City's procured-by-unlawful-means claim. Nothing in our opinion or mandate provided for her to determine whether Guttshall had exhibited bias and was thus no longer an independent or impartial hearing examiner.[13] Simply because the City raised the issue of Guttshall's bias in its trial brief (if it can be read to broadly include such

---

[13]Nor could our January 2020 opinion have provided for remand on that issue as Guttshall's lack of independence or bias (1) did not come to light until her deposition, which was taken after the case was remanded, and (2) was further reinforced in an email that she sent after the trial court granted the TRO. As we have noted in a prior opinion regarding the existence of a claim to which res judicata can apply,

> Res judicata bars a second suit between the same parties to a final judgment if the second suit is based on the same claims that were raised or could have been raised in the first action. *Amstadt* . . . , 919 S.W.2d [at] 652 . . . . For res judicata to apply to a claim, that claim must have been in existence when the first suit was filed. *In re D.W.G.*, 391 S.W.3d 154, 167 (Tex. App.—San Antonio 2012, no pet.); *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

*Strange v. Estate of Lindemann*, 408 S.W.3d 658, 661 (Tex. App.—Fort Worth 2013, no pet.).

18

issue) and asked for conclusions of law on whether she was still qualified to serve as an independent hearing examiner does not mean that the issue has been pleaded and fully and finally litigated, nor could it have been due to the limited nature of the remand. Accordingly, we hold that the issue of Guttshall's independence was not properly before nor decided by Judge Fitzpatrick and thus res judicata did not apply to bar the City's declaratory-judgment action.

### 3. Whether Guttshall's Denial of the City's Plea to the Jurisdiction Was Preclusive of a Declaratory Judgment Construing Section 143.057

In the remainder of his first issue, O'Neill argues that the issue of whether Guttshall can preside over the rehearing is a matter that was submitted by the City to the arbitrator—Guttshall—in its plea to the jurisdiction and that Guttshall's ruling denying the plea is conclusive under collateral-estoppel principles. O'Neill equates Guttshall's role as a hearing examiner with that of an arbitrator and cites case law stating that an arbitrator's award has the effect of a judgment and that courts apply collateral-estoppel principles to arbitration awards. *See Cont'l Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 474 (Tex. App.—Eastland 2003, no pet.) (citing *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). O'Neill's argument cuts against him, and he does not explain how his argument—that Guttshall's denial of the City's plea to the jurisdiction had the effect of a judgment—precludes a declaratory-judgment action interpreting a statute and certain Local Rules.

19

First, if Guttshall's denial of the City's plea to the jurisdiction is treated as an arbitration award, then a trial court has authority to hear an appeal of the award on grounds that the arbitrator was "without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." *See* Tex. Loc. Gov't Code Ann. § 143.057(j). Similarly, under the TAA, a trial court has authority to vacate an arbitrator's award on the grounds of evident partiality of an arbitrator. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A) ("On application of a party, the court shall vacate an award if[] . . . (2) the rights of a party were prejudiced by[] (A) evident partiality by an arbitrator appointed as a neutral arbitrator."). Thus, Guttshall's ruling denying the City's plea to the jurisdiction, even if treated as an arbitration award, is not conclusive under collateral-estoppel principles.

Moreover, the City's plea to the jurisdiction and declaratory-judgment action accomplished separate purposes. The City's plea to the jurisdiction preserved the City's objection to having Guttshall sit as the hearing examiner for the rehearing—in the event that she did preside over the rehearing—despite Judge Fitzpatrick's previous ruling that Guttshall's prior award was "procured by unlawful means." What O'Neill's argument never explains is why the City was not compelled to object to Guttshall's efforts to go forward with a hearing, and how it should have presented that objection other than the plea to the jurisdiction that it filed.

20

The Texarkana Court of Appeals has set forth a summary of the law on the necessity of objecting when a party is made aware of an arbitrator's actual bias:

> "In judicial proceedings, the requirements for preserving complaints and for the record are set out, respectively, in Rules 33 and 34 of the Texas Rules of Appellate Procedure. Although these rules are not written for appeals from arbitration awards, their principles should govern such appeals." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 n.80 (Tex. 2011). Indeed, a party can waive an otherwise valid objection by proceeding with the arbitration despite knowledge of facts giving rise to such an objection. *Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 688 (Tex. App.—Dallas 2009, no pet.). As a result, "[a] party who knows or who has reason to know of an arbitrator's alleged bias but remains silent pending the outcome of the arbitration waives the right to complain." *Tex. Health Mgmt., LLC v. Healthspring Life & Health Ins. Co.*, No. 05-18-01036-CV, 2020 WL 3071729, at *4 (Tex. App.—Dallas June 10, 2020, no pet.) (mem. op.). When a party believes the arbitrator is biased, he "may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse." *Bossley v. Mariner Fin. Grp., Inc.*, 11 S.W.3d 349, 351–52 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 79 S.W.3d 30 (Tex. 2002); *see Dealer Comput[.] Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012) (party seeking to vacate arbitration award based on evident partiality must object during arbitration; failure to do so results in waiver of right to object); *Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001) ("Even when a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel."); *Cook Indus., Inc. v. C. Itoh & Co. (Am.)*, 449 F.2d 106, 107–08 (2d Cir. 1971) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection.").

*Load Trail, LLC v. Julian*, 622 S.W.3d 472, 478 (Tex. App.—Texarkana 2021, no pet.).

Because the City was aware of Guttshall's partiality prior to the rehearing, it was necessary for the City to raise its objection to having her preside over the rehearing.

21

The City did so by filing its plea to the jurisdiction on January 25, 2021, which was twelve days after receiving a January 13, 2021 email from O'Neill's counsel that the rehearing would be held by Guttshall on January 28, 2021.

The City's declaratory-judgment action, on the other hand, went beyond preserving the City's objection to Guttshall's presiding over the rehearing of O'Neill's case, i.e., it sought more relief than merely attempting to stop that rehearing. Instead, the City filed its declaratory-judgment action to obtain relief from the uncertainty created by Texas Local Government Code Section 143.057, specifically as to who should conduct a rehearing and as to whether certain Local Rules come into play in deciding on a hearing examiner for a rehearing.[14]

The UDJA is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). Here, neither of the parties cite a case regarding the interplay between the Civil Service Act and the UDJA. The Houston Fourteenth Court of Appeals has held that a trial court can make declarations regarding the non-merit issues that are specifically appealable per Section 143.057(j)—that the hearing examiner was without jurisdiction; that the hearing examiner exceeded her jurisdiction; or that the order was procured by fraud, collusion, or other unlawful means. *See City of Houston v. Clark*, 252 S.W.3d 561, 565 (Tex. App.—Houston [14th

---

[14]The City makes clear in its brief that the declaratory-judgment action "is *not* a direct appeal of a hearing examiner's award seeking to determine whether a hearing examiner violated Chapter 143."

22

Dist.] 2008, no pet.) (holding that the district court could not review the merits of the hearing-examiner's decision on the issue of whether an Acting Fire Chief had authority to suspend members of the fire department but could only review the three non-merits issues); *Nuchia v. Woodruff*, 956 S.W.2d 612, 616 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (op. on reh'g) (concluding that the City had the right to judicial review under the UDJA to determine if the hearing examiner in fact exceeded his authority). *See generally* Tex. Loc. Gov't Code Ann. § 143.057(j). Here, the City's request for a declaration—that "Guttshall may not preside over the new civil[-]service hearing regarding O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department"—has a jurisdiction component to it, as it sought to have the trial court declare that a hearing examiner who has rendered an unlawful award in a fire fighter's civil-service appeal and has demonstrated a bias against one party may not rehear the same matter under Texas Local Government Code Section 143.057. Such jurisdictional declarations have been previously permitted by our sister court, and we see no reason distinguishing this case from those. *See Clark*, 252 S.W.3d at 565; *Nuchia*, 956 S.W.2d at 616. Moreover, O'Neill does not argue that a declaratory-judgment action is the wrong vehicle for interpreting a statute, which is what the City sought in its declaratory-judgment action.

Accordingly, we hold that Guttshall's denial of the City's plea to the jurisdiction did not trigger the collateral-estoppel defense and thus did not bar the City's declaratory-judgment action.

23

### 4.    Disposition of First Issue

Having addressed and rejected the arguments raised in O'Neill's first issue, we overrule O'Neill's first issue.

## VI. Exhaustion-of-Administrative-Remedies Defense Did Not Deprive the Trial Court of Subject-Matter Jurisdiction

In his second issue, O'Neill argues that the trial court erred by impliedly finding that subject-matter jurisdiction exists. O'Neill contends that the district court lacked subject-matter jurisdiction because "the City failed to exhaust its administrative remedies by using the procedure established in the Fort Worth Civil Service Commission rules [i.e., Local Rules 13.129 and 13.130[15]] for parties desiring the appointment of a new hearing examiner."

---

[15]These two sections are found under the heading "Appeals to Independent Third[-]Party Hearing Examiners":

13.129

    If a situation arises pertaining to the administrative processes of selecting a Hearing Examiner, or meeting notices, or request for rescheduling, recusal, conflict of interest, etc., and the situation is not provided for [in] Chapter 143 or in these Rules and Regulations, then the parties and the Director shall attempt to mutually resolve the situation by agreement. If the matter is not one capable of being reasonably resolved by agreement, then the Director may refer the matter to the administrative processes of the entity sponsoring the Hearing Examiner to resolve the situation within their own processes.

13.130

    If a Hearing Examiner has been initially selected but thereafter is objected to or is asked to be recused by a party, both parties may

As an initial matter, the City notes in its brief that O'Neill's failure-to-exhaust-remedies argument constitutes an unpleaded affirmative defense. The record demonstrates that O'Neill did not raise the defense until he filed his post-trial brief on whether Guttshall was independent. O'Neill concedes that his answer did not raise the defense of failure to exhaust administrative remedies but argues that a lack of subject-matter jurisdiction is not an affirmative defense that must be pleaded under Texas Rule of Civil Procedure 94. *See generally* Tex. R. Civ. P. 94. Even assuming that O'Neill's post-trial brief timely raised the failure-to-exhaust-remedies defense, we cannot say that the trial court erred by impliedly finding that it had subject-matter jurisdiction because the declarations that it was asked to make involved statutory

---

mutually agree to excuse the Hearing Examiner and thereafter request a new list of qualified Hearing Examiners and start the selection process over again. If no such agreement can be reached, then both parties shall prepare a written statement including their request and reasoning therefore which shall be submitted to the Director. The Director shall then transmit same to the agency sponsoring the Hearing Examiner which shall then resolve the dispute according to its own administrative processes. The response shall either excuse the Hearing Examiner and thereafter provide a new list or it shall provide a written statement of reasons why the Hearing Examiner was not excused.

*See Civil Service Rules*, City of Fort Worth (Dec. 14, 1998), https://www.fortworthtexas.gov/departments/hr/administration/prr/civilservice (last visited Jan. 25, 2022). The rules do not contain a section or heading related to rehearings.

interpretation (a task reserved to the courts, not the Civil Service Commission) and because the declarations were questions of law.[16]

## A. Applicable Law

The exhaustion-of-administrative-remedies rule requires that a plaintiff pursue all available remedies within the administrative process before seeking judicial relief. *City of Dickinson v. Stefan*, 611 S.W.3d 654, 666 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The failure to do so deprives the trial court of jurisdiction to decide the case. *Id.* "Generally, the doctrine of exhaustion of administrative remedies does not apply when there are purely questions of law involved." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 557 (Tex. 2016).

## B. Analysis

First, it is unclear why any administrative remedies would need to be exhausted with the Fort Worth Civil Service Commission before filing a declaratory-judgment action in a trial court to have a statute or ordinance construed because the Civil Service Commission does not have jurisdiction to construe statutes or ordinances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (stating that "[a] *court of record* within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed" (emphasis added)). O'Neill cites no case law showing that the Local Rules of the Fort Worth Civil Service Commission must be

---

[16]For purposes of this appeal, we do not decide whether the Local Rules relied on by O'Neill constitute administrative remedies that must be exhausted in a suit under Chapter 143. *See* Tex. R. App. P. 47.1.

complied with before filing a declaratory-judgment action to construe a statute. The Corpus Christi–Edinburg Court of Appeals, however, has addressed whether a party must exhaust administrative remedies under the Civil Service Act before filing an action requesting a declaratory judgment construing a city ordinance that applied to police officers, and that court has concluded that no exhaustion of remedies was required. *See City of San Benito v. Ebarb*, 88 S.W.3d 711, 718 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied).

In that case, the City of San Benito attempted to reclassify the declaratory-judgment action filed by law-enforcement officers as a suit "seeking review of alleged violations" of the Civil Service Act. *Id.* The City of San Benito further argued that the law-enforcement officers' proposed declaration—that promulgation of City Ordinance 2143 necessarily resulted in a de facto demotion—fell directly within the purview of the Civil Service Act, and so the law-enforcement officers must have first sought the administrative remedies related to demotions provided for in that Act. *See id.* (citing Tex. Loc. Gov't Code Ann. §§ 143.054, .010, .015 (dealing with demotions, commission appeal procedures, and appellate review of commission decisions)). The Corpus Christi–Edinburg court disagreed and pointed out that "[t]he petition ma[de] no reference to any [C]ivil [S]ervice [C]ommission decision or in any way attempt[ed] to appeal any such decision." *Id.* The court held that "[t]he administrative remedies requirements of the Civil Service Act are not prerequisites to a declaratory[-]judgment action regarding the construction or validity of a city ordinance." *Id.*

Although the demotions of law-enforcement officers are not at issue here, the Corpus Christi–Edinburg court's opinion is instructive in the declaratory-judgment setting. We conclude that to the extent, if any, that the Civil Service Commission's Local Rules require certain administrative remedies to be exhausted before filing a suit under Chapter 143 of the Texas Local Government Code, the administrative remedies do not need to be exhausted before filing a declaratory-judgment action under Chapter 37 of the Texas Civil Practice and Remedies Code.[17]

Furthermore, as set forth above, the declarations pleaded for by the City involved purely questions of law—whether Guttshall could preside over the rehearing of O'Neill's appeal of his indefinite suspension from the Fort Worth Fire Department and whether O'Neill is required to participate in the selection process for a hearing examiner. The Texas Supreme Court has held that the doctrine of exhaustion of administrative remedies does not apply to questions of law. *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 557.

Accordingly, the trial court did not err by impliedly finding that it had subject-matter jurisdiction over the City's declaratory-judgment action. We overrule O'Neill's second issue.

---

[17]O'Neill does not argue that the City failed to plead claims that were proper for a declaratory-judgment action. *Cf. Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) ("[A] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.").

## VII. The Trial Court's Remedy is in Line with the Purpose of the Civil Service Act

In his third issue, O'Neill argues that the trial court erred by fashioning a remedy that is not authorized by the Civil Service Act, i.e., allowing a rehearing before a new hearing examiner. O'Neill contends that it was error for the trial court to rely on the TAA in fashioning a remedy because the TAA is an inapplicable statute that uses different language than the Civil Service Act and because no "case in the history of the Civil Service Act" has overturned the parties' selection of a hearing examiner. As noted, O'Neill does not attack the trial court's conclusion of law and supporting finding that Guttshall was biased to the extent that she could no longer serve as an independent hearing examiner. Thus, we express no view on whether the trial court was correct in deciding that Guttshall's bias rendered her no longer independent. Instead, the only question before us is whether the trial court fashioned a proper remedy to address what should occur to deal with a hearing examiner who has demonstrated a lack of independence. Based on the unique facts presented here—the trial court determined that the hearing examiner no longer met the statutory requirements that provide for an *independent* third-party hearing examiner to preside over an appeal from an indefinite suspension—the trial court's use of the TAA for guidance in crafting a remedy is in line with the practice that the Texas Supreme Court has followed in related situations involving gaps in Chapter 143, and that

29

remedy provides a reasonable mechanism for complying with Section 143.057's

requirement to have an independent hearing examiner decide the case.

## A. Applicable Conclusions of Law

O'Neill references conclusions of law 3 and 4, and we repeat those conclusions

here:

> 3. Chapter 143 is silent regarding who presides over such a rehearing; however, Chapter 143 contemplates that all hearing examiners shall be "independent," "neutral," and "impartial," so that a "just and fair" decision may be rendered;
>
> 4. The Texas Supreme Court has previously looked to the Texas Arbitration Act when interpreting provisions in Chapter 143. The Texas Arbitration Act allows for a new arbitration panel to be selected when an arbitrator has reached a decision by "corruption, fraud, or other undue means."

Because O'Neill's third issue takes aim at the trial court's reference to the TAA's

provision that allows for a new arbitrator on rehearing, it appears that only conclusion

of law 4 is at play. O'Neill does not mention the remaining conclusions of law, but

we set them forth here to show the procedure that the trial court put into place for

the selection of a hearing examiner for the rehearing to address the conclusion that

Guttshall was biased to the extent that she was no longer independent:

> 5. Almalee Guttshall previously issued an unlawful decision in the underlying [civil-service] appeal and has subsequently demonstrated a bias against the City—and in favor of her previous, unlawfully procured decision—such that she cannot now serve as an "independent," "neutral," and "impartial" hearing examiner for the rehearing of [O'Neill]'s [civil-service] appeal;

30

6. The rehearing of [O'Neill]'s [civil-service] appeal shall proceed before a [civil-service] hearing examiner selected in accordance with § 143.057(d) of the Texas Local Government Code, provided[,] however, that Almalee Guttshall may not under any circumstances preside over the rehearing;

7. The rehearing of [O'Neill]'s [civil-service] appeal, as with all [civil-service] appeals, must be coordinated through the City's Civil Service Director in accordance with Chapter 143 of the Texas Local Government Code;

8. If the parties do not agree on the selection of an independent hearing examiner by August 22, 2021—ten days after the 90th day from the date of the [f]inal judgment in this case—the Civil Service Director shall immediately request a list of seven qualified neutrals in accordance with § 143.057(d) of the Texas Local Government Code;

9. [O'Neill] shall reimburse the City for [O'Neill]'s share of the previous AAA list requested by the Civil Service Director[,] and the parties shall split the costs of any future list requested by the Civil Service Director in this matter.

## B. Relevant Law

As mentioned above, Section 143.057 of the Local Government Code is entitled "Hearing Examiners" and provides that a fire fighter may elect to appeal an indefinite suspension to an independent third-party hearing examiner instead of to the Civil Service Commission. Tex. Loc. Gov't Code Ann. § 143.057(a)–(c). Section 143.057 also sets forth the procedure for selecting a hearing examiner:

If the appealing fire fighter or police officer chooses to appeal to a hearing examiner, the fire fighter or police officer and the department head, or their designees, shall first attempt to agree on the selection of an impartial hearing examiner. If the parties do not agree on the selection of a hearing examiner on or within 10 days after the date the appeal is filed, the director shall immediately request a list of seven qualified neutral arbitrators from the American Arbitration Association or the

31

Federal Mediation and Conciliation Service, or their successors in function. The fire fighter or police officer and the department head, or their designees, may agree on one of the seven neutral arbitrators on the list. If they do not agree within five working days after the date they received the list, each party or the party's designee shall alternate striking a name from the list[,] and the name remaining is the hearing examiner. The parties or their designees shall agree on a date for the hearing.

*Id.* § 143.057(d). The section then sets forth the guidelines for conducting the hearing before the hearing examiner and the deadline for a hearing examiner to render a decision. *Id.* § 143.057(e)–(h). The section ends by providing that a district court may hear an appeal of a hearing examiner's award only on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means. *Id.* § 143.057(j). The section, however, makes no provision for a scenario in which the district court vacates the hearing examiner's award and remands the case for a rehearing.

In the City's petition for a declaratory judgment, the City noted that the Texas Supreme Court in *City of Waco v. Kelley* had looked to an analogous statute—the TAA—to fill in the gaps when the Civil Service Act is silent. 309 S.W.3d 536, 550–51 (Tex. 2010). Specifically, the Texas Supreme Court stated that

[a]s we noted in *City of Pasadena*, 292 S.W.3d at 19, the statutory language in Section 143.057(j), allowing for an appeal from a hearing examiner's decision, is similar to the language regarding appeals in the Texas General Arbitration Act. In an appeal from an arbitration award, if a portion of the award is invalid, the other portion will be unaffected only if the two parts are so distinct and independent that the valid part will truly express the judgment of the arbitrator. *Gulf Oil Corp. v. Guidry*, . . . 327 S.W.2d 406, 409 ([Tex.] 1959). But if an invalid portion is not severable and distinct so that the remaining valid part of the award truly

32

expresses the arbitrator's judgment, the entire award is void. *Id.* We believe the same reasoning applies to an appeal from a hearing examiner's decision.

*Id.* The Texas Supreme Court also looked at whether such remedy was reasonable in light of the Civil Service Act as a whole:

> Further, when a commission decision is appealed to a district court, Section 143.015(b) specifies that the appeal is de novo and the district court "may grant the appropriate legal or equitable relief necessary to carry out the purposes of this chapter." Tex. Loc. Gov't Code[] [Ann.] § 143.015(b). Appeals from the decision of a hearing examiner are different. In an appeal from a hearing examiner's decision, the district court may hear an appeal only on the grounds that the examiner "was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." *Id.* § 143.057(j). The statute does not specify that in considering an appeal from a hearing examiner's decision the district court may grant appropriate legal or equitable relief as it does for an appeal from a commission decision; the statute simply does not address what type of relief may be granted. But it is clear that the [Texas] Legislature intended for the hearing examiner's decision to be determinative of the officer's appeal, so in some instances the only reasonable relief is a new hearing. For example, if the examiner's decision was procured by fraud, collusion, or other unlawful means, then it is hard to see any proper relief other than the decision being vacated and a new hearing ordered. And as this case demonstrates, when part of the examiner's decision exceeds his jurisdiction, the true judgment of the hearing examiner might be negated by enforcing only part of the[ ]decision. Such results are not reasonable in light of the Act as a whole, and we do not attribute unreasonable intentions to the [Texas] Legislature. *See* Tex. Gov't Code [Ann.] § 311.021(3). Accordingly, the appropriate remedy in situations such as this is for the hearing examiner's decision to be vacated and a rehearing to take place.

*Id.* at 551–52.

Turning to the TAA concerning the issue here, it has a specific section dedicated to rehearings after an arbitration award is vacated. *See* Tex. Civ. Prac. &

33

Rem. Code Ann. § 171.089. That section provides that on vacating an award on certain grounds, such as when the rights of a party were prejudiced by evident partiality by an arbitrator appointed as a neutral arbitrator or when an arbitrator exceeded her power, the trial court may order a rehearing before neutral arbitrators. *Id.* § 171.089(a); *see also id.* § 171.088(a)(2)(A), (a)(3)(A) (mandating that a trial court shall vacate an award if, among other things, the rights of a party were prejudiced by evident partiality by an arbitrator appointed as a neutral arbitrator or if an arbitrator exceeded her power).

### C.     Analysis

In support of his contention that the Civil Service Act does not provide for reversing the parties' selection of a hearing examiner when an award is set aside on judicial review, O'Neill cites several cases in which a hearing examiner's decision was set aside and the case was remanded to the same hearing examiner. *Kelley*, 309 S.W.3d at 551–52; *City of Pasadena*, 292 S.W.3d at 14; *City of DeSoto v. White*, 288 S.W.3d 389 (Tex. 2009); *Butler v. City of Big Spring*, 556 S.W.3d 897 (Tex. App.—Eastland 2018, no pet.); *City of Beaumont v. Mathews*, No. 09-10-00198-CV, 2011 WL 3847338 (Tex. App.—Beaumont Aug. 31, 2011, no pet.) (mem. op.); *City of Athens v. MacAvoy*, 353 S.W.3d 905 (Tex. App.—Tyler 2011, pet. denied); *Steubing v. City of Killeen*, 298 S.W.3d 673 (Tex. App.—Austin 2009, pet. denied).[18]   However, none of these cases dealt

---

[18]The City argues that such cases merely remand the case to a lower court level, not to a specific factfinder. In his reply brief, O'Neill argues that the Texas Supreme

34

with a hearing examiner who was determined to no longer meet the criteria to be an "independent," "neutral," and "impartial" hearing examiner. As explained in more detail below, it does not logically flow that simply because the Civil Service Act does not provide for reversing the parties' selection of a hearing examiner when an award is set aside on judicial review and because no "case in the history of the Civil Service Act has done so either,"[19] the parties are stuck with the initial hearing examiner for the rehearing even if, in the interim, the hearing examiner has been determined to be biased against a party.

> O'Neill also argues that the Texas Supreme Court in *Kelley*

> made the obvious point that when the TAA and the Civil Service Act have the same or similar language, they should be interpreted in the same or a similar fashion. It should be just as obvious that when the TAA contains a provision that the Civil Service Act does not, that provision cannot just be written into the Civil Service Act by the trial court.

---

Court in *City of DeSoto* directed the trial court to "remand to **the** hearing examiner," not to **a** hearing examiner, and not to the hearing-examiner level. Because the cases do not deal with the specific issue here—a hearing examiner who has been determined to have a bias—we do not discuss the parties' arguments further. *See* Tex. R. App. P. 47.1.

[19]We offer no opinion on the veracity of this quote from O'Neill's brief. However, we did find a case in which a second hearing examiner ruled on the case. *See In re City of Beaumont*, No. 09-17-00304-CV, 2017 WL 5179785, at *1 n.2 (Tex. App.—Beaumont Nov. 9, 2017, orig. proceeding) (per curiam) (mem. op.). In that case, the first hearing examiner "acted outside the authority that he possessed when he, without conducting an evidentiary hearing, reinstated [the fire fighter] to his position with the City," and upon remand, the attorney representing the fire fighter filed a motion asking the district court to return the case to the AAA for further proceedings. A second hearing examiner was selected, and that hearing examiner conducted an evidentiary hearing. *See id.*

Here, it does not appear that the trial court was attempting to write any provisions into the Civil Service Act but rather was attempting to fashion a remedy for the unique scenario presented—a scenario on which the Civil Service Act is silent. As noted by the Texas Supreme Court, "legislatures do not always mean to say something by silence. Legislative silence may be due to mistake, oversight, lack of consensus, implied delegation to courts or agencies, or an intent to avoid unnecessary repetition." *See PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004). The Texas Supreme Court further noted that "[i]n some cases of statutory silence, we have looked to the statute's purpose for guidance." *Id.* Because the statute is silent on the issue presented here, we look to the purpose of the Civil Service Act to determine whether allowing a hearing examiner to preside over a rehearing after the hearing examiner has been found to be biased in favor of the fire fighter is consistent with the Civil Service Act's goals. *See Steubing*, 298 S.W.3d at 680 (Henson, J., dissenting) (following the direction of *PPG Indus.* and looking to the Civil Service Act's purpose).

The purpose of the Civil Service Act is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." Tex. Loc. Gov't Code Ann. § 143.001(a). The statute's purpose of seeking "efficient" departments and "capable personnel" is not served by having a hearing examiner who is biased against the City preside over the rehearing of a fire fighter's indefinite suspension, thus

36

permitting a potentially unfit fire fighter to return to the department without an independent determination of the substance of the complaint against him. *Cf. City of DeSoto*, 288 S.W.3d at 398. Moreover, looking at the section of the Civil Service Act dealing with hearing examiners, it specifically states in three places that the hearing examiner must be independent. *See* Tex. Loc. Gov't Code Ann. § 143.057(a)–(c) (referencing that when a fire fighter elects to appeal an indefinite suspension, it is to "an *independent* third[-]party hearing examiner" (emphasis added)); *see also City of Pasadena*, 292 S.W.3d at 18 (stating that "[t]he Act's use of independent hearing examiners provides a forum for resolving civil[-]service disputes that is detached from city government, thus furthering the Act's purpose"). To allow a biased hearing examiner to preside over the rehearing merely because the Civil Service Act is completely silent regarding rehearings is antithetical to Section 143.057(a), (b), and (c)'s specific statements that require appeals to be presided over by independent hearing examiners. *See* Tex. Loc. Gov't Code Ann. § 143.057(a)–(c). Thus, we believe, as the trial court did, that the situation requires a different remedy.

The trial court, following the Texas Supreme Court's example for crafting remedies when the Civil Service Act provides none, looked to the TAA for guidance and found that it allowed for a new arbitration panel to be selected when an arbitrator has reached a decision by "corruption, fraud, or other undue means." *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.089(a). Because the trial court determined that "Guttshall [had] previously issued an unlawful decision in the underlying [civil-service]

37

appeal and ha[d] subsequently demonstrated a bias against the City—and in favor of her previous, unlawfully procured decision—such that she cannot now serve as an 'independent,' 'neutral,' and 'impartial' hearing examiner for the rehearing of [O'Neill]'s [civil-service] appeal," the trial court concluded that "[t]he rehearing of [O'Neill]'s [civil-service] appeal shall proceed before a [civil-service] hearing examiner selected in accordance with § 143.057(d) of the Texas Local Government Code." This conclusion is in line with the purpose of the Civil Service Act and utilizes the Civil Service Act's procedures for selecting a hearing examiner rather than creating a new procedure.

Accordingly, we hold that the trial court did not err by looking to the TAA for guidance and correctly drew conclusion of law 4 from the unique facts presented here.[20] *See Eco Planet*, 2020 WL 6707561, at *2. We therefore overrule O'Neill's third issue.

## VIII. Conclusion

Having overruled O'Neill's three issues, we affirm the trial court's judgment.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: February 3, 2022

---

[20]Based on the trial court's findings of facts and conclusions of law, specifically those that mention that Guttshall is no longer impartial, we do not read the trial court's declarations as providing for a new hearing examiner any time an award is vacated because it was procured by unlawful means. Our holding is therefore limited to the unique facts presented here.

38